Teresa **NEUMEYER** and Larry
Neumeyer, Plaintiffs

v.

Jeffery **BEARD** and Kenneth
Kyler, Defendants

No. 3:02 CV 2152.

United States District Court,
M.D. Pennsylvania.

Jan. 20, 2004.

Teresa Neumeyer, Chesaning, MI, Pro se.

Larry Neumeyer, Chesaning, MI, Pro se.

Francis R. Filipi, Office of Attorney General, Harrisburg, PA, for Defendants.

## MEMORANDUM

MUNLEY, District Judge.

Before the court for disposition is Magistrate Thomas M. Blewitt's report and recommendation with regard to cross-motions for summary judgment filed by the parties to the present case. The Magistrate's report recommends that summary judgment be granted to the defendants. The plaintiffs are Teresa Neumeyer and Larry Neumeyer and the defendants are Jeffery Beard, Secretary of the Pennsylvania Department of Corrections ("DOC") and Kenneth Kyler, Superintendent of the State Correctional Institution at Huntingdon ("SCIH"). Plaintiffs have filed objections to the report and recommendation. For the reasons that follow, the objections will be overruled and the report and recommendation adopted.

## Background [1]

According to a policy of the Pennsylvania Department of Corrections ("DOC"), prison visitor vehicles parked on facility

---

**1.** The material facts are largely undisputed and are derived from the plaintiffs' and defendants' briefs.

grounds are subject to random searches after the owner or operator consents in writing. If a prison visitor refuses to provide written consent permitting SCIH corrections officers to search his or her vehicle, then the visitor will not be allowed to enter the prison to visit any prisoner on that day.

On various dates, the plaintiffs visited Teresa Neumeyer's father, Preston Pfeifly, at the SCIH. On May 28, 2001, and May 27, 2002, the plaintiffs' vehicle was searched by SCIH corrections officers after it was parked on institutional property. Prior to the searches, Plaintiff Teresa Neumeyer had signed a "Consent To Search Vehicle" form, which gave her consent to having the vehicle searched.

There does not exist any information or allegations in any SCIH records or reports indicating that the plaintiffs have brought, or attempted to bring, unlawful contraband and illegal narcotics into SCIH or possessed the same in their vehicle. DOC policy does not require corrections officers to have a search warrant, probable cause or reasonable suspicion to search a vehicle on SCIH grounds as such vehicle searches are conducted only after obtaining the written consent of the owner or operator.

Not every prison visitor vehicle is searched as SCIH. There are no written standards as to how the searches are to be conducted; in general, they are conducted randomly as time and complement permit. The discovery of illegal narcotics in a prison visitor vehicle by SCIH corrections officers triggers notification of the Pennsylvania State Police.

Plaintiffs contend that having their vehicle subjected to search under these circumstances violates the Fourth Amendment. They have brought suit under 42 U.S. § 1983 seeking declaratory injunctive relief but not damages. Defendants have moved for summary judgment arguing that as there is no dispute that the plaintiffs consented to both searches, the proper analysis must be made under the First Amendment's right of association and that conditioning visiting prisoners on the visitor agreeing to permit searching their vehicle when parked on state correctional institution property is constitutional. Plaintiffs have also filed a motion for summary judgment.

On November 20, 2003, Magistrate Thomas M. Blewitt issued a report and recommendation concluding that defendants' motion for summary judgment should be granted and that plaintiff's motion for summary judgment should be denied. Plaintiffs have filed objections to the report and recommendation, bringing the case to its present posture.

**Standard of review**

In disposing of objections to a magistrate's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C); *see also Henderson v. Carlson,* 812 F.2d 874, 877 (3d Cir.1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions. *Id.*

**Discussion**

In his R & R, the Magistrate concluded that searches of prison visitor vehicles do not infringe upon, or violate, their constitutional rights to privacy under the Fourth Amendment. Plaintiffs object to this conclusion and argue that "[p]ermitting prison guards to rummage through vehicles without any written standards as to vehicle selection and search techniques is the precise evil the Fourth Amendment was designed to prevent." Plaintiffs' Brief, p. 2 (citations omitted). We disagree.

Visitors to prisons are not afforded the same Fourth Amendment protections as

individuals "on public streets or in a home." *See Spear v. Sowders,* 71 F.3d 626, 629–30 (6th Cir.1995) ("[A] citizen does not have a right unfettered visitation of a prisoner that rises to a constitutional dimension. In seeking entry to such a controlled environment, the visitor simultaneously acknowledges a lesser expectation of privacy."). As a result, prison officials have greater authority to conduct searches of prison visitors. *Id.* at 630 ("[P]rison authorities have much greater leeway in conducting searches of visitors. Visitors can be subjected to some searches ... merely as a condition of visitation, absent any suspicion.").

Plaintiffs acknowledge that prison visitors may enjoy a reduced expectation of privacy as a result of entering prison property but argue that a "reasonable suspicion" standard must be met before a vehicle can be constitutionally searched. Plaintiffs, however, incorrectly rely on *Wiley v. Department of Justice,* 328 F.3d 1346, 1353 (Fed.Cir.2003), to support their proposition. In *Wiley,* however, the plaintiff whose vehicle was searched by prison officials was an employee of the federal correctional institution and not a prison visitor. *Id.* at 1347–48.[2] Accordingly, plaintiffs' reliance on *Wiley* is misplaced.

■ Plaintiffs further argue that the Magistrate's conclusion that a vehicle search is not an invasive search is clearly erroneous. We disagree. The Magistrate was comparing vehicle searches to strip and body cavity searches, the latter of which courts have recognized as "an embarrassing and humiliating experience." *Spear,* 71 F.3d at 630 (citing *Hunter v. Auger,* 672 F.2d 668, 674 (8th Cir.1982) (holding that the Fourth Amendment "requires that prison authorities have at least a reasonable suspicion that the visitor is bearing contraband before conducting" a strip and body cavity search.)) We agree with the Magistrate and with other courts that have concluded that, "[o]bviously, while unpleasant, the nature of an automobile search is far less intrusive than a strip and body cavity search...." *Id.* at 633. Accordingly, we also conclude that the Fourth Amendment does not require reasonable suspicion of contraband before prison officials can conduct a vehicle search.

■ Additionally, it is well-settled that there is not a constitutional right to visitation for convicted prisoners, their family and spouses.[3] *See, e.g., Young v. Vaughn,*

---

**2.** The *Wiley* Court held that "[t]his case falls squarely under the *Ortega* decision and thus should be analyzed under the reasonable suspicion standard." *Id.* at 1350. In *Ortega,* "the Court addressed the appropriate Fourth Amendment standard for a search of a public employee's office by a public employer in areas in which the employee had a reasonable expectation of privacy." *Id.* (citing *O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987)). Since the holding in *Wiley* only relates to the Fourth Amendment standard for workplace searches of a government employee by a public employer, it has no applicability to the present case.

**3.** Plaintiffs argue that "[w]hether or not family members have a constitutional right of visitation should have no bearing in this case."

We disagree. It has a bearing on the case because of plaintiffs' own argument that the Court should evaluate the constitutionality of prison visitor vehicle searches upon Fourth Amendment reasonableness standards. According to the plaintiff's own argument, therefore, the court must determine whether the vehicle searches are entitled to protection under the Fourth Amendment. The plaintiffs' vehicle was searched because they chose to visit an inmate: the vehicle is on the prison's property; visitors are put on notice that their vehicles and personal property are subject to search by large signs posted at all entrances of the prison and before entering the visitors' parking lot; and the plaintiffs consented to the vehicle search in exchange for permission to enter the prison to visit a prisoner. Plaintiffs' citation to *Overton v. Bazzetta,* 539 U.S.

No. 98–C4630, 2000 WL 1056444, at *3, 2000 U.S. Dist. LEXIS 10667, at *8 (E.D.Pa. July 1, 2000) (holding that "there is no constitutionally protected right to prison visitation"); *Flanagan v. Shively*, 783 F.Supp. 922, 934 (M.D.Pa.1992) ("Inmates have no constitutional right to visitation ... Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion."); *Young v. Vaughn*, No. 98–C4630, 2000 WL 1056444, at *2, 2000 U.S. Dist. LEXIS 10667, at *5 (E.D.Pa. July 31, 2000) ("Convicted prisoners, their family and spouses have no constitutional right to visitation."); *Africa v. Vaughn*, No. 96–C0649, 1996 WL 65445, 1996 U.S. Dist. LEXIS 1622, at *1 (E.D.Pa. Feb. 14, 1996) ("Neither convicted prisoners nor their family members have an inherent constitutional right to visitation."). Additionally, there are no Pennsylvania regulations expressly mandating a right to prison visitation. *See Africa v. Vaughn*, 1996 WL 65445, at *1, 1996 U.S. Dist. LEXIS 1622, at *4.

Accordingly, since there is neither a Constitutional nor a state statutory right to visit prison inmates, the Magistrate was correct to conclude that the search of plaintiffs' vehicle should not be scrutinized under Fourth Amendment standards.[4]

■ Plaintiffs further object to the Magistrate's conclusion that this case should be analyzed under the reasonableness standard set forth in *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The Magistrate, however, only evaluated the plaintiffs claim under the reasonableness standard in the alternative; the Magistrate first correctly evaluated plaintiffs' claim under the legitimate penological objectives standard set forth in *Young v. Lane*, 922 F.2d 370, 374 (7th Cir.1991). Using that standard, the Magistrate correctly concluded that the searches of plaintiffs' vehicle do meet legitimate penological objectives, i.e. to prevent drugs and other contraband from entering the prison and to reduce assaults in prison. *See* Kyler Dec. (Doc. 24).

In also analyzing the case under the reasonableness standard, the Magistrate sought to establish that, even if the plaintiffs had a fundamental right to visitation, the right was properly restricted by DOC policy. Plaintiff argues that, under this standard, it is clear that prison vehicle searches are not rationally related to prison security. We disagree. And while we need not analyze this issue as the searches are constitutional under the legitimate penological standard, we will address it for

---

126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) fails to support their position. The *Overton* court upheld Michigan prison regulations that limited visits by minor children; prohibited visits by former inmates; and temporarily banned visitation to prisoners with two substance-abuse violations. *Id.* "The very object of imprisonment is confinement Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context." *Id.* at 2167.

4. Plaintiffs' argument concerning the "special needs" doctrine is similarly misplaced. The "special needs" doctrine is an exception to the probable-cause requirement for overcoming the Fourth Amendment's prohibition on unreasonable searches. *New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring). The doctrine applies where there is a "special law enforcement need for greater flexibility." *Id.* Since there is no constitutional right for prison visitations, the defendants are not required to establish an exception to the probable-cause requirement. Accordingly, plaintiffs' argument concerning the "special needs" doctrine is misplaced.

purposes of completeness. The factors for determining reasonableness are as follows:

1) a rational connection between the prison decision and the governmental interest supported; 2) the existence of alternative means of exercising the abridged right; 3) the impact of an accommodation of the abridged right on prison resources; and 4) the absence of alternatives for exercising the right at de minimis cost to penological interests.

*Young v. Vaughn,* 2000 WL 1056444, at *2, 2000 U.S. Dist. LEXIS 10667, at *6–7.

Visitor vehicle searches are rationally related to the prison's interest in maintaining security. "Visitors are a security risk, and deference should be to prison officials' visitation decisions." *Id.* Plaintiffs, themselves, acknowledge that "the presence of illegal narcotics inside a prison impairs security and endangers the lives of both inmates and staff." Plaintiff's Brief (Doc. 39), p. 6. Vehicle searches help to uncover narcotics and other contraband in order to protect the staff, visitors and inmates. *See* Defendants' brief (Doc. 24), p. 6.

Plaintiff argues that "common sense tells us that only the prison visitor, not the automobile, enters the facility to visit." Plaintiff's Brief (Doc. 39), p. 7. The defendants have, however, pointed out that SCIH has inmates who live outside the prison walls and inmates who have outside prison work details. *See* Defendants' brief (Doc. 24), Attachment # 1, ¶ 13. These inmates may have access to visitors' vehicles parked at the prison. *Id.* Plaintiff finally complains that:

SCI–Huntingdon is located in a residential area yet prison officials only search vehicles located in their parking lot. It is simply not rational for the State to insist that prison visitor vehicles must be searched to safeguard the facility while automobiles and houses surrounding the prison (which no doubt contain firearms and other dangerous items) are

never searched and are equally accessible to prisoners.

Plaintiff's Brief (Doc. 39), p. 7.

We disagree. We find that it is rational for prison officials to search visitors' vehicles on prison property, after having duly notified the visitors that their vehicles may be searched and after having obtained the permission of the visitors for the search. We also find that it is rational for prison officials *not* to search private homes on private property, which are owned by individuals who are not seeking to enter the prison and have not given their consent to have their homes searched.

Accordingly, we find that there is a rational connection between visitor vehicle searches and prison security. Therefore, even if the "legitimate penological objectives standard" is not the correct standard to apply, the stricter "reasonableness standard" is also met.

**Conclusion**

For the reasons set forth above, petitioner's objections to the Magistrate's report and recommendation are overruled. Accordingly, petitioner's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted. An appropriate order follows.

*ORDER*

**AND NOW,** to wit, this _____ day of January 2004, it is hereby **ORDERED** as follows:

1) The plaintiffs' objections (Doc. 38) to the magistrate's report and recommendation are **OVERRULED;**

2) The magistrate's report and recommendation (Doc. 35) is **ADOPTED;**

3) The plaintiffs' motion for summary judgment (Doc. 15) is **DENIED;**

4) The defendants' motion for summary judgment (Doc. 22) is **GRANTED;**

5) The Clerk of Court is directed to close this case.