

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-25-2005

# Neumeyer v. Beard

Precedential or Non-Precedential: Precedential

Docket No. 04-1499

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Neumeyer v. Beard" (2005). *2005 Decisions.* Paper 588.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/588

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-1499

———

TERESA NEUMEYER; LARRY NEUMEYER,
                                        Appellants

v.

JEFFREY BEARD, in his official capacity as
Secretary of the PA DOC; KENNETH KYLER, in
his official capacity as Superintendent of SCI at Huntingdon

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 02-cv-02152)
District Judge: Hon. James M. Munley

———

Submitted Under Third Circuit LAR 34.1(a)
July 11, 2005

Before: SLOVITER and McKEE, Circuit Judges,
and FULLAM,* District Judge

(Filed:  August 25, 2005)

———

* Hon. John P. Fullam, Senior Judge, United States District
Court for the Eastern District of Pennsylvania, sitting by
designation.

Teresa Neumeyer, Pro Se
Larry Neumeyer, Pro Se
P.O. Box 172
Chesaning, Michigan 48616

      Appellants Pro Se

Gerald J. Pappert
      Attorney General
Francis R. Filipi
      Senior Deputy Attorney General
Calvin R. Koons
      Senior Deputy Attorney General
John G. Knorr, III
      Chief Deputy Attorney General
      Chief, Appellate Litigation Section
Office of Attorney General
Harrisburg, PA 17120

      Attorneys for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Acting pro se, Plaintiffs/Appellants Teresa and Larry Neumeyer brought this action pursuant to 42 U.S.C. § 1983 seeking a declaratory judgment against Defendants/Appellees Jeffrey Beard, the Secretary of the Pennsylvania Department of Corrections, and Kenneth Kyler, the Superintendent of the State Correctional Institute at Huntingdon, Pennsylvania (hereafter "prison officials"), that the practice of subjecting prison visitors' vehicles to random searches violated the Fourth and Fourteenth Amendments to the United States Constitution. The United States District Court for the Middle District of Pennsylvania rejected this claim as a matter of law and thus entered summary judgment in favor of Defendants. Neumeyer v. Beard, 301 F.

Supp. 2d 349 (M.D. Pa. 2004).  The Neumeyers appeal.[1]

## I.

Teresa Neumeyer's father ("prisoner") is a prisoner incarcerated at the State Correctional Institute at Huntingdon ("SCIH"), an institution managed by the Pennsylvania Department of Corrections ("DOC").  Neumeyer, 301 F. Supp. 2d at 350.  Mr. and Ms. Neumeyer, who are citizens of Michigan, make fairly regular trips to visit the prisoner at the SCIH.

The SCIH maintains a parking lot for use by visitors such as the Neumeyers while they are visiting the facility.  Notably, some inmates have outside work details and such inmates "may have access to visitors' vehicles parked at the prison."  301 F. Supp. 2d at 353.

Prison officials have posted large signs at all entranceways to the prison and immediately in front of the visitors' parking lot.  In part, these signs read:

> THIS IS A STATE CORRECTIONAL INSTITUTION. ALL PERSONS, VEHICLES AND PERSONAL PROPERTY ENTERING OR BROUGHT ON THESE GROUNDS ARE SUBJECT TO SEARCH.  DRUG DETECTION DOGS AND ELECTRONIC DEVICES MAY BE USED FOR THIS PURPOSE.

Kyler Decla. ¶ 8.  The signs further inform visitors that anyone caught bringing prohibited items onto the SCIH's property will be prosecuted to the fullest extent of the law.

Under SCIH/DOC policy, prison visitor vehicles parked on facility grounds are subject to random searches after the

---

[1]  The District Court had jurisdiction under 28 U.S.C. § 1331; this court has jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291.

owner or operator signs a pre-printed "Consent To Search Vehicle" form. 301 F .Supp. 2d at 350. If an individual refuses to sign this form, SCIH/DOC officials simply refuse the would-be visitor entry to the prison, ask the visitor to leave the premises, and do not pursue further action. As found by the District Court: "If a prison visitor refuses to provide written consent permitting SCIH corrections officers to search his or her vehicle, then the visitor will not be allowed to enter the prison to visit any prisoner on that day." Id. Compare with Spear v. Sowders, 71 F.3d 626, 632 (6th Cir. 1995) ("Spear [a visitor to the prison] claims that [prison] officials told her that she could either consent to the search, or that she would be detained while they secured a warrant and then she would be forcibly searched if necessary."). If, however, the search proceeds and the SCIH/DOC officials uncover contraband or evidence of illegality, they will notify the Pennsylvania State Police.

The SCIH/DOC policy does not require corrections officers to possess a search warrant, probable cause, or reasonable suspicion before they may seek to search a vehicle parked on prison grounds. In addition, the SCIH/DOC officials do not seek permission to search the vehicle of every visitor who parks in the lot. As found by the District Court, "[t]here are no written standards as to how the searches are to be conducted; in general, they are conducted randomly as time and complement permit." Neumeyer, 301 F. Supp. 2d at 350.

The Neumeyers have visited the prisoner at the SCIH on approximately ten occasions. On May 28, 2001, and again on May 27, 2002, several SCIH/DOC correctional officers searched the Neumeyers' vehicle. 301 F. Supp. 2d at 350. Prior to these searches, Ms. Neumeyer signed the written consent form. Id. According to evidence submitted by the Neumeyers, once the SCIH/DOC officers select a vehicle for inspection and obtain the requisite signature, they require the operator and any passengers to exit the vehicle and open passenger compartments and the trunk for inspection.

The record shows that the two searches of the Neumeyers' automobile did not uncover any contraband or

4

evidence of illegal activity. Indeed, there does not exist any information or allegations in any SCIH/DOC records or reports indicating that the Neumeyers have brought – or attempted to bring – unlawful contraband into the SCIH or possessed the same in their vehicle.

On November 26, 2002, the Neumeyers filed a Complaint seeking a declaratory judgment and an order enjoining further searches of their vehicle. The Complaint contended that, inasmuch as the Neumeyers planned to continue to visit their incarcerated relative at the SCIH, they possessed a reasonable fear that SCIH/DOC officials would continue to infringe upon their rights in the future absent judicial intervention. See generally City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). The Complaint did not seek damages.

Thereafter, the parties filed cross-motions for summary judgment. The District Court adopted the report and recommendation of a magistrate judge, filed a Memorandum Opinion, and entered summary judgment in favor of the prison officials. Neumeyer, 301 F. Supp. 2d at 353. This appeal followed.

## II.

This court reviews the District Court's grant of summary judgment de novo, applying the same standard as did the District Court. Union Pac. R.R. Co. v. Greentree Transp. Trucking Co., 293 F.3d 120, 125 (3d Cir. 2002). Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. "Summary judgment, however, must not be granted where there is a genuine dispute about a material fact, 'that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Fasold v. Justice, 409 F.3d 178, 183 (3d Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Here, there are no disputed issues of material fact and resolution of this matter turns solely on interpretations of law.

5

**III.**

Section 1983, the federal civil rights statute here at issue, "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005). Here, the Neumeyers' Complaint averred that the prison officials violated their rights under the Fourth Amendment as made applicable to state actors by operation of the Fourteenth Amendment. See generally Mapp v. Ohio, 367 U.S. 643 (1961). Specifically, the Neumeyers' Complaint contended that the prison officials' program has violated and will continue to violate their constitutional rights because it allows SCIH/DOC correctional officers to conduct vehicle searches without any individualized suspicion.[2]

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. Typically, in order to be "reasonable" under the Fourth

_____

[2] The case at bar involves only vehicle searches; thus, we need not address the question of whether and when the suspicionless search of a prison visitor's person would be constitutional. See generally Thorne v. Jones, 765 F.2d 1270, 1277 (5th Cir.1985) (holding that Constitution requires correctional officers to have reasonable suspicion before subjecting prison visitors to strip search); Hunter v. Auger, 672 F.2d 668, 674 (8th Cir. 1982) ("[W]e conclude that the Constitution mandates that a reasonable suspicion standard govern strip searches of visitors to penal institutions."); Deserly v. Mont. Dep't of Corr., 995 P.2d 972, 978 (Mont. 2000) ("While prison visitors can be subjected to some searches, such as pat-downs or metal detector sweeps, merely as a condition of visitation, absent any suspicion, more intrusive searches, such as strip searches, require more.").

6

Amendment, a search must be supported by a warrant, unless the search is supportable under one or more of the "specifically established and well-delineated exceptions" to the warrant requirement. United States v. Brightwell, 563 F.2d 569, 574 (3d Cir. 1977) (internal citations and quotations omitted). Here, the prison officials argue that the SCIH/DOC policy is supportable under both the "consent" exception and the "special needs" exception to the warrant requirement. We first consider whether this case falls within the "special needs" exception.

The Supreme Court of the United States has explained that "[n]either a warrant nor probable cause, nor, indeed any measure of individualized suspicion, is an indispensable component of [Fourth Amendment] reasonableness in every circumstance." Nat'l Treasury Employees Union v. Von Raab, 489 U.S. 656, 665 (1989). Rather:

> [O]ur cases establish that where a Fourth Amendment intrusion serves special government needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context.

Id. at 665-66 (emphasis added). In other words, there are instances when a search furthers a "special governmental need" beyond that of normal law enforcement such that the search, although not supported by the typical quantum of individualized suspicion, can nonetheless still be found constitutionally "reasonable." See, e.g., Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646 (1995); Mich. Dep't of State Police v. Sitz, 496 U.S. 444 (1990). But see Ferguson v. City of Charleston, 532 U.S. 67 (2001) (finding unconstitutional state hospital's suspicionless performance of diagnostic test to obtain evidence of pregnant patient's drug use and holding that state's interest in using threat of criminal sanctions to deter pregnant women from using cocaine did not qualify as special need); City of Indianapolis v. Edmond, 531 U.S. 32, 48 (2000) (holding that suspicionless

7

seizures at highway checkpoints, conducted for interdiction of illegal drugs, was "indistinguishable from [Indianapolis'] general interest in crime control" and hence violative of Fourth Amendment).

Because the government need not show probable cause or even reasonable suspicion to support a search under the special needs doctrine, the government must prove instead that its search meets a general test of "reasonableness." Under this standard, the constitutionality of a particular search "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests" beyond that of typical law enforcement. Wilcher v. City of Wilmington, 139 F.3d 366, 373-74 (3d Cir. 1998) (internal citations and quotations omitted).

The ready applicability of the special needs doctrine to the prison context is evident. As noted by the United States Court of Appeals for the Eighth Circuit:

> The penal environment is fraught with serious security dangers. Incidents in which inmates have obtained drugs, weapons, and other contraband are well-documented in case law and regularly receive the attention of the news media. Within prison walls, a central objective of prison administrators is to safeguard institutional security. To effectuate this goal prison officials are charged with the duty to intercept and exclude by all reasonable means all contraband smuggled into the facility.

Hunter v. Auger, 672 F.2d 668, 674 (8th Cir. 1982); see also State v. Manghan, 313 A.2d 225, 228 (N.J. Super. Ct. Law Div. 1973).

Given these concerns, we conclude that, considering the relatively minor inconvenience of the searches, balanced against the SCIH/DOC officials' special need to maintain the security and safety of the prison that rises beyond their general need to enforce the law, the prison officials' practice of engaging in

8

suspicionless searches of prison visitors' vehicles is valid under the special needs doctrine. See Spear, 71 F.3d at 632-33 ("[W]e have made it clear that a government official does not need probable cause to conduct every search and that a prison visitor search falls into a special category."); Romo v. Champion, 46 F.3d 1013, 1016 (10th Cir. 1995) ("The public interest in keeping drugs out of prisons and maintaining prison security is substantial . . . . The stop of plaintiffs' vehicle therefore did not violate the Fourth Amendment."); Commonwealth v. Dugger, 486 A.2d 382, 384 (Pa. 1985) ("A prison setting involves unique concerns and security risks, thereby necessitating more leeway in allowing searches than might be found in a non-penal environment."); see also United States v. Edwards, 498 F.2d 496, 500-01 (2d Cir. 1974) (holding airport searches reasonable and hence constitutional).

The Neumeyers argue that the searches at issue cannot fall under the special needs doctrine due to the fact that SCIH/DOC officials notify the police if they uncover contraband. Thus, argue the Neumeyers, the purpose of the searches is to further the goals of ordinary law enforcement. We reject this argument. The mere fact that a search may result in arrest and criminal prosecution, and thus have the ancillary effect of furthering ordinary law enforcement concerns, does not negate the applicability of the special needs doctrine. Indeed, the Supreme Court has upheld suspicionless search programs even when the program at-issue results in arrests. See Sitz, 496 U.S. at 447. We thus decline to hold unconstitutional the vehicle search program simply because SCIH/DOC officials report any uncovered illegality to the police. Cf. United States v. Davis, 482 F.2d 893, 908 (9th Cir. 1973) ("Of course, routine airport screening searches will lead to discovery of contraband and apprehension of law violators. This practical consequence does not alter the essentially administrative nature of the screening process, however, or render the searches unconstitutional.").

One final point bears mention. The record shows that SCIH officials employ no written standards as to which vehicles are to be searched or how the searches are to be conducted; rather, the DOC/SCIH correctional officers conduct the searches

9

"randomly as time and complement permit." 301 F. Supp. 2d at 350. The Neumeyers thus complain that the vehicle-search program vests too much discretion in the hands of the officers in the field and consequently is not reasonable. See generally Delaware v. Prouse, 440 U.S. 648, 661 (1979) (holding unconstitutional Delaware's random automobile stop and detention program in part because it vested ultimate decision of what vehicles to stop in "the unbridled discretion of law enforcement officials . . . in the field").

Although the lack of standards or constraining mechanisms in the SCIH/DOC program raises the specter of arbitrariness, we find the Neumeyers' argument ultimately unavailing. As Professor LaFave has commented:

> If not all visitors to a jail or prison are subjected to screening . . . then there arises the potential for arbitrariness. . . . While an inspection system extended to all visitors is consequently not accusatory in nature, a contributing factor to finding it reasonable, it does not follow that a more selective scheme is unreasonable. If personnel or other limitations make a screening of all visitors impracticable, it is certainly proper to conduct searches at random, but it would be otherwise if certain individuals were singled out upon an improper basis.

5 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 10.7(b), at 326 (4th ed. 2004).

The Neumeyers have not argued, and the record contains no evidence, that SCIH/DOC officers have selected search targets on an improper basis (such as race). Stated otherwise, although the SCIH/DOC search program certainly has more potential for abuse than, for instance, a program whereby all vehicles entering the prison were searched, there is no evidence that SCIH/DOC officers have in fact abused the program. In light of the substantial deference this court gives to prison officials, see Turner v. Safley, 482 U.S. 78, 84-85 (1987), we

10

decline to hold the SCIH/DOC vehicle-search program unreasonable simply because it vests the decision of which vehicles are to be searched in the random discretion of the officers in the field.

## IV.

In sum, we hold that the SCIH/DOC policy of subjecting prison visitors' vehicles to random searches is reasonable, supportable as a special needs search, and hence constitutional despite the lack of individualized suspicion. We will thus affirm the District Court's entry of summary judgment.[3]

---

[3] In light of our decision, we need not reach the prison officials' alternate argument that the SCIH/DOC policy is supportable under the consent exception to the warrant requirement.

11