# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1788

_____

| | | |
|---|---|---|
| Brian True, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| State of Nebraska; Robert Houston, | * | |
| Director, Department of Correctional | * | Appeal from the United States |
| Services, an Agency of the State of | * | District Court for the |
| Nebraska; Diane Sabatka-Rine, | * | District of Nebraska. |
| Warden, Lincoln Correctional Center; | * | |
| Robert Madsen, Deputy Warden, | * | |
| Lincoln Correctional Center; Darlene | * | |
| Percival, Lincoln Correctional Center, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: February 9, 2010
Filed: July 9, 2010

_____

Before LOKEN,[1] Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

_____

[1]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

Brian L. True's employment at a Nebraska correctional facility was terminated because he refused to allow a random, suspicionless search of his vehicle. He sued under 42 U.S.C. § 1983, claiming a violation of his constitutional rights under the First, Fourth, and Fourteenth amendments. The district court granted summary judgment to the defendant State and its correctional officials. True appeals the Fourth and Fourteenth amendment rulings. Having jurisdiction under 28 U.S.C. § 1291, this court reverses in part, affirms in part, and remands.

I.

The Department of Correctional Services (DCS) employed True at the Lincoln Correction Center (LCC) from January 3, 1995, until June 28, 2007. In order to prevent contraband from entering the prison, DCS conducts unannounced searches of employees' vehicles in its lots, by selecting five stalls randomly from a diagram of the parking lot. The LCC lot is outside the prison's confines. Most of the prisoners do not have access to it, but "community custody" inmates apparently do.

When hired, True received a copy of (and pledged to read) the DCS employee handbook, which says that "vehicles parked on state property are subject to search at any time," and that refusal "to submit to a search may constitute grounds for disciplinary action and/or suspension." On April 7, 2007, stall 7 on the south row was selected for a search to occur the next week. On April 13, True was informed that his car, parked in stall 7, had been selected for a random search. True refused to allow a search of his car; none occurred. A superior informed him he would be disciplined for refusing to consent to the search.

On May 31, DCS held a disciplinary hearing. True said that he would not comply with any future random searches of his vehicle if he returned to work. After the hearing, he was terminated.

II.

"We review a grant of summary judgment de novo and apply the same standards as the district court." **Cordry v. Vanderbilt Mortgage & Fin., Inc.**, 445 F.3d 1106, 1109 (8th Cir. 2006). "Summary judgment is warranted if the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." **Id.** at 1109-10. "If 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party, as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." **Reed v. City of St. Charles**, 561 F.3d 788, 790 (8th Cir. 2009), *quoting* **Scott v. Harris**, 550 U.S. 372, 380 (2007).

A.

True argues that the district court erred in granting the defendants' motion for summary judgment on his Fourth Amendment claim. Defendants respond that True has no standing to assert Fourth Amendment rights, as no search took place. In order to have standing, there must be (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury is redressable by a favorable decision. **Lujan v. Defenders of Wildlife**, 504 U.S. 555, 560-61 (1992). Here, True lost his job, an injury-in-fact. As to the second element, the conduct-complained-of is the defendants' enforcement of a policy of randomly searching employee vehicles, which led to True's termination. Defendants assert that because no search occurred, his injury was not caused by a Fourth Amendment violation. However, this court has held: "If a search is unreasonable, a government employer cannot require that its employees consent to that search as a condition of employment." **McDonell v. Hunter**, 809 F.2d 1302, 1310 (8th Cir. 1987) (citing **Pickering v. Board of Education**, 391 U.S. 563, 568 (1968)); *see also* **City of Ontario**

***v. Quon***, No. 08-1332, slip op. at 7 (U.S. June 17, 2010) ("[i]ndividuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer," *quoting **O'Connor v. Ortega***, 480 U.S. 709, 717 (1987) (plurality opinion)).  Finally, the injury here would be redressable; True asks for reinstatement, lost pay, other damages, and injunctive relief against enforcement of the random vehicle search policy.  True has standing to assert a violation of his Fourth Amendment rights.

Defendants next contend that True impliedly consented to any search of his vehicle, and thus waived his Fourth Amendment claim, because signs at the entrance to the LCC parking lot tell employees that if they park there, their vehicles are subject to search.  "Whether consent was given is a determination to be made from the totality of the circumstances."  ***United States v. Oyekan***, 786 F.2d 832, 838 (8th Cir. 1986) (citing ***Schneckloth v. Bustamonte***, 412 U.S. 218, 227 (1973)).  A valid consent to a search waives all Fourth Amendment claims.  *See, e.g., **Schneckloth***, 412 U.S. at 219.  And, an employer cannot require consent to an unreasonable search as a condition of employment.  *See, e.g., **McDonell***, 809 F.2d at 1310.  While it is unclear whether an employer can require consent to an unreasonable search as a condition to use a parking lot,[2] it is unnecessary to address that question because from the totality of the circumstances, True did not consent to any search of his vehicle.  When asked for consent to search his car, he explicitly refused (to the point of being fired).

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . . ."  "'The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government,' without regard to

---

[2] *See **McGann v. Ne. Ill. Reg'l Commuter R.R. Corp.***, 8 F.3d 1174, 1183 (7th Cir. 1993) (holding that signs posted at entrance to public employer parking lot, warning that cars parked there are subject to search, were not enough to establish implied consent to search as a matter of law).

whether the government actor is investigating crime or performing another function." *Quon*, No. 08-1332, slip op. at 7, *quoting **Skinner v. Railway Labor Executives' Ass'n***, 489 U.S. 602, 613-14 (1989). "The Fourth Amendment applies as well when the Government acts in its capacity as an employer." *Id.*

The Supreme Court recently held that a city did not violate the Fourth Amendment rights of an employee police officer by reviewing his text messages sent and received by city-issued pagers. *Quon*, No. 08-1332, slip op. at 17. The Court applied the approaches of both the four-Justice plurality and Justice Scalia's concurrence in *O'Connor v. Ortega. Id.* at 9-16. "A four-Justice plurality concluded that the correct analysis has two steps," first whether the employee had a reasonable expectation of privacy, considering the "operational realities of the workplace." *Quon*, No. 08-1332, slip op. at 8 (citing *O'Connor*, 480 U.S. at 717 (plurality opinion)). "On this view 'the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis.'" *Id.*, *quoting O'Connor*, 480 U.S. at 718 (plurality opinion). "Next, where an employee has a legitimate privacy expectation, an employer's intrusion on that expectation 'for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances.'" *Id.*, *quoting O'Connor*, 480 U.S. at 725-26 (plurality opinion).

Justice Scalia, concurring in the judgment in *O'Connor*, would have held at step one "that the offices of government employees . . . are covered by Fourth Amendment protections as a general matter." *O'Connor*, 480 U.S. at 731(concurring in judgment). At the second step, Justice Scalia would have held that "government searches to retrieve work-related materials or to investigate violations of workplace rules–searches of the sort that are regarded as reasonable and normal in the private-employer context–do not violate the Fourth Amendment." *Id.* at 732 (concurring in judgment).

Under the plurality's step one, Fourth Amendment rights are implicated only if the conduct of government officials infringes "an expectation of privacy that society is prepared to consider as reasonable." *O'Connor*, 480 U.S. at 715 (plurality opinion)*, quoting **United States v. Jacobsen***, 466 U.S. 109, 113 (1984)). "Because the reasonableness of an expectation of privacy, as well as the appropriate standard for a search, is understood to differ according to context, it is essential first to delineate the boundaries of the workplace context. The workplace includes those areas and items that are related to work and are generally within the employer's control." *Id.* "Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer. The operational realities of the workplace, however, may make *some* employees' expectations of privacy unreasonable when an intrusion is by a supervisor rather than a law enforcement official." *Id.* at 717 (emphasis in original). "The employee's expectation of privacy must be assessed in the context of the employment relation." *Id.* "Given the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *Id.* at 718.

This court has addressed the privacy expectation of corrections officers: "While correction officers retain certain expectations of privacy, it is clear that, based upon their place of employment, their subjective expectations of privacy are diminished while they are within the confines of the prison." *McDonell*, 809 F.2d at 1306 (citation omitted). "We believe that society is prepared to accept this expectation of privacy as reasonable although diminished 'in light of the difficult burdens of maintaining safety, order and security that our society imposes on those who staff prisons.'" *Id.*, *quoting **Security and Law Enforcement Employees, Dist. C, No. 82***

*v. Carey*, 737 F.2d 187, 204 (2d Cir. 1984). In this case, as to step one, the parties appear to agree that True had such a "diminished" expectation of privacy.[3]

At step two, the question is whether the search was reasonable under all the circumstances. "[I]t is settled . . . that except in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant." *O'Connor*, 480 U.S. at 720 (internal quotation marks and citations omitted). "The Court has held that the 'special needs' of the workplace justify one such exception." *Quon*, No. 08-1332, slip op. at 12 (citing *O'Connor*, 480 U.S. at 725, 732 (plurality opinion), (Scalia, J., concurring in judgment); *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 666-67 (1989)).

In determining the proper standard of reasonableness, the four-Justice plurality in *O'Connor* balanced "the substantial government interests in the efficient and proper operation of the workplace" against "the privacy interests of government employees in their place of work which, while not insubstantial, are far less than those found at home or in some other contexts." 480 U.S. at 726. It concluded that such searches "should be judged by the standard of reasonableness under all the circumstances. Under this reasonableness standard, both the inception and the scope of the intrusion must be reasonable." *Id.* at 726-27. Here, this court is concerned only with the reasonableness of the search at inception, as no actual search took place.

---

[3]Under Justice Scalia's approach in *O'Connor*, True had a reasonable expectation of privacy. Although that case dealt with the search of an office, not a parked car, Justice Scalia would have held that a government employee has a reasonable expectation of privacy even in a shared office, except where "the office is subject to unrestricted public access." *O'Connor*, 480 U.S. at 731(concurring in judgment). Here, although there is a question as to inmate access to the parking lot, access to the interior of True's car is restricted to True and those he allows inside.

In *McDonell*, this court first observed: "The search of a vehicle is much less intrusive than a search of one's person." **McDonell**, 809 F.2d at 1309 (citing **Almeida-Sanchez v. United States**, 413 U.S. 266, 279 (1973) (Powell, J., concurring)). *See also* **Neumeyer v. Beard**, 421 F.3d 210, 214 (3d Cir. 2005) (a suspicionless search of a vehicle in a prison lot involves a "relatively minor inconvenience"). This court then engaged in an *O'Connor*-like reasonableness inquiry regarding random searches of employee vehicles in prison parking lots:

> By the same balancing of individual rights against the interests of the correctional institution in maintaining security, we find that it is not unreasonable to search vehicles that are parked within the institution's confines where they are accessible to inmates. Such searches may be conducted without cause but must be done uniformly or by systematic random selection of employees whose vehicles are to be searched. It also is not unreasonable to search on a random basis, as described *supra*, employees' vehicles parked outside the institution's confines if it can be shown that inmates have unsupervised access to those vehicles. Any other vehicle search may be made only on the basis of a reasonable suspicion, based on specific objective facts and reasonable inferences drawn from those facts in light of experience, that the vehicle to be searched contains contraband. We believe this is reasonable in light of *Hudson v. Palmer*, *supra*, in which the Supreme Court granted prison officials "unfettered access" to prisoners' cells as places where inmates can conceal contraband.

809 F.2d at 1309 (citing **Hudson v. Palmer**, 468 U.S. 517, 527 (1984)). The location of a parking lot and the circumstances of inmate access are relevant to the "interests of the correctional institution in maintaining security"; a lot outside the confines of the prison has greater potential to be a source of contraband when prisoners have unsupervised access to it. Randomly searching such a lot may be an efficient means of preventing the smuggling of contraband. Therefore, balancing a prison employee's privacy interests against "the substantial government interests in the efficient and proper operation of the workplace," specifically, the interests of the correctional institution in maintaining security, it is reasonable under all the

circumstances to search, by "systematic random selection," employee vehicles in prison parking lots to which inmates have unsupervised access.[4]

In this case, it is undisputed that, among other facts, the searches of vehicles in the LCC lot were done on a uniform, systematic, random basis, and the lot is outside the institution's confines. However, there are genuine issues of material fact as to the circumstances of inmate access to vehicles in the lot.

1. In True's incident report of April 13, 2007 – filed by *defendants* to support their motion for summary judgment – he states:

> At no time were any inmates allowed direct or unsupervised access to my vehicle or other vehicles in the Lincoln Correctional Center parking lot since tower #1 is an armed post and maintains coverage of both the Lincoln Correctional Center and Diagnostic & Evaluation Center parking lots along with central control maintaining 24 hour/7day a week camera surveillance.

Although not sworn, True's incident report is admissible at summary judgment as an admission of a party opponent. *See* **Fed. R. Evid. 801(d)(2)(A)**. Moreover, the parties rely on the incident report both here and in the district court. *See Williams v. Evangelical Retirement Homes of Greater St. Louis*, 594 F.2d 701, 703 (8th Cir. 1979) (holding that absent a motion to strike or other timely objection, a court may

---

[4]Also, such searches appear not to violate the Fourth Amendment under Justice Scalia's approach in *O'Connor*. He would have held that "government searches to retrieve work-related materials or to investigate violations of workplace rules–searches of the sort that are regarded as reasonable and normal in the private-employer context–do not violate the Fourth Amendment." *O'Connor*, 480 U.S. at 732 (concurring in judgment). While that position addressed a search of an office, an employee's possession of contraband in a car in a prison lot is a "violation[] of workplace rules." And while a search of an employee's car might not be "reasonable and normal in the private-employer context," a prison has a unique need to exclude contraband and maintain institutional security.

consider a document which fails to conform to the formal requirements of Rule 56(e)).

2. In True's affidavit of October 31, 2008, he says that "only community custody inmates of DCS had access to the parking lot of either LCC or D & E while I was employed with DCS." Viewed most favorably to True, this affidavit is reconcilable with his statement in the incident report, as the affidavit addresses only the fact of inmate access, not the circumstances of inmate access.

3. The affidavit of Frank Hopkins, Deputy Director of Institutions at DCS, states: "Inmates with appropriate custody levels are assigned to work details that have access to the institutional parking lots under intermittent supervision by staff and towers." Neither Hopkins nor any other summary-judgment materials define "intermittent."

Based on these three statements, there is a dispute as to the circumstances of inmate access to vehicles in the LCC lot–facts material to the reasonableness of the search at its inception.[5] Summary judgment was not appropriate on True's Fourth Amendment claim.

B.

True asserts that the defendants violated his constitutional right to equal protection of the laws by conducting random searches of employees' vehicles, but not visitors' vehicles, in the LCC lot. The district court granted summary judgment on this issue to defendants.

---

[5]On remand, the district court may, of course, consider all the circumstances of the search in determining reasonableness.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Exec. Air Taxi Corp. v. City of Bismarck*, 518 F.3d 562, 566 (8th Cir. 2008), *quoting City of Cleburne, Tex. v. Cleburne Living Cntr.*, 473 U.S. 432, 439 (1985) (internal quotation marks omitted). "When a State treats persons differently based on a suspect classification, such as race, the state action is subject to strict judicial scrutiny. Where no suspect classification is involved, however, the State need only show that the differential treatment is rationally related to a legitimate state interest." *Exec. Air Taxi Corp*, 518 F.3d at 566 (citing *Vacco v. Quill*, 521 U.S. 793, 799 (1997)). Thus, True must show that employees parking in the LCC lot are similarly situated to visitors parking there, and that any differential treatment is not rationally related to a legitimate state interest.

Assuming that employees parking in the LCC lot are similarly situated to visitors parking there,[6] differential treatment of the two groups is, however, rationally related to a legitimate state interest. It is uncontested that rational basis review applies. "Under rational basis review, challenged statutory classifications are accorded a strong presumption of validity, which is overcome only if the party challenging them negates 'every conceivable basis which might support it.'" *Indep. Charities of America, Inc. v. Minnesota*, 82 F.3d 791, 797 (8th Cir. 1996), *quoting F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

---

[6]*Compare Neumeyer*, 421 F.3d at 214 (holding that visitors' vehicles (to which outside-work-detail inmates may have access) in a prison lot may be searched on a random, suspicionless basis) *with McDonell*, 809 F.2d at 1306. *See also Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir. 1982) (holding that visitors entering penal institutions may be strip searched if there is reasonable suspicion that the visitor is carrying contraband); *Security and Law Enforcement Employees, Dist. C, No. 82 v. Carey*, 737 F.2d 187, 204 (2d Cir. 1984) (citing *Hunter* and noting the "significant parallels between visitors to correctional facilities and correction officers who work in them").

Here, the policy of random, suspicionless searches of only employees' vehicles is rationally related to the legitimate state interests of institutional security, contraband interdiction, and administrative efficiency. First, employees' vehicles are at the Correctional Center daily, which conceivably makes it easier to smuggle contraband. Second, this court's holding in *McDonell* makes clear that random, suspicionless searches of employees' vehicles are permissible under certain conditions, but does not address visitors' vehicles. In the absence of express guidance, it is conceivable that prison officials may choose the safer course, limiting searches to employees' vehicles. Because the search policy is supported by these conceivable bases, it is rationally related to a legitimate state interest, and does not violate the Equal Protection clause.

## III.

The judgment of the district court is reversed in part and affirmed in part, and the case remanded for proceedings consistent with this opinion.

_____