# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3413

_____

Cynthia Schafer Uhiren,          *
                                     *

        Appellant,        *

                                   *     Appeal from the United States
    v.                       *     District Court for the Eastern
                                   *     District of Arkansas

Bristol-Myers Squibb Company, Inc. *
a.k.a. Mead Johnson & Company,   *
                                   *

        Appellee.        *

_____

Submitted:   May 12, 2003

Filed:   October 16, 2003

_____

Before WOLLMAN and BEAM, Circuit Judges, and NANGLE,* District Judge.

_____

NANGLE, District Judge.

Plaintiff Cynthia Schafer Uhiren ("Uhiren") appeals from the decision of the district court granting summary judgment in favor of defendant Bristol-Myers Squibb Company, Inc. ("Bristol-Myers") in Uhiren's product liability claims arising out of her use of Stadol Nasal Spray ("Stadol"), a prescription pain medication manufactured and distributed by Bristol-Myers. We affirm.

_____

    * The HONORABLE JOHN F. NANGLE, United States District Judge for the Eastern District of Missouri, sitting by designation.

I.

The substantive and procedural facts relevant to this appeal follow. Uhiren suffered from chronic migraine headaches. In 1994, she was under the care of Dr. Mary Corbitt, a neurologist. Dr. Corbitt prescribed Stadol to alleviate Uhiren's pain until Dr. Corbitt discovered that Uhiren had obtained Stadol prescriptions from multiple sources without Dr. Corbitt's knowledge. At that point, Dr. Corbitt confronted Uhiren, expressed concern about the quantity of Stadol that Uhiren was consuming, and offered to refer Uhiren to a drug rehabilitation program. Uhiren did not enter into a rehabilitation program, and she did not return to Dr. Corbitt for further treatment.

After leaving Dr. Corbitt's care, Uhiren continued to acquire Stadol through other doctors. Early in 1995, she obtained a Stadol prescription from Dr. Mary O'Brien by knowingly misleading Dr. O'Brien about her medical history. Shortly thereafter, in February 1995, Uhiren sought to obtain Stadol through Dr. Steven Landry. Uhiren testified that she did not tell Dr. Landry about her treatment by Dr. O'Brien because Uhiren believed that if she told him, Dr. Landry would not prescribe Stadol for her. The record includes a total of seven writings from physicians, each of whom had prescribed Stadol to Uhiren without knowing that she was receiving Stadol from other sources.

In 1994, Uhiren received 366 bottles of Stadol. The amount of Stadol she received decreased significantly in 1995 and 1996, and continued to decrease in 1997, 1998, 1999, and 2000.

In February of 1995, Dr. Steven Collier, Uhiren's nurse practitioner supervisor, spoke with Uhiren about an investigation into Uhiren's use of Stadol conducted by the Arkansas Health Department. Dr. Collier subsequently terminated Uhiren's employment.

In July 1995, Uhiren received a notice from the Arkansas State Board of Nursing notifying her of a disciplinary hearing to determine whether to suspend her nursing license due to her use of Stadol. The hearing took place on August 10, 1995, after which Uhiren's nursing license was suspended.

On August 13, 1998, Uhiren filed a complaint against Bristol-Myers but was granted a voluntary non-suit on June 30, 1999. On June 29, 2000, she filed the present complaint in which she alleged that "[b]etween 1992 and 1995, as a proximate result of the use of Stadol, [Uhiren] became addicted to and dependent upon [Stadol]," and that in 1995 she "suffered pain, diarrhea, severe stomach cramps and lost her sense of smell and taste" as a result of her addiction to Stadol. Bristol-Myers moved for summary judgment, asserting that because Uhiren had become addicted to Stadol more than three years before filing her complaint, the Arkansas statute of limitations barred her claims.

Uhiren argued that summary judgment was inappropriate because there was a genuine factual dispute as to when she became aware that she was addicted to Stadol. On June 17, 2002, she submitted an affidavit stating that she did not believe that she was addicted until 1996 or 1997 when she suffered withdrawal symptoms. She also noted deposition testimony of her expert psychologist, Dr. Harold J. Bursztajn. With respect to Uhiren's awareness of her Stadol problem at the time Dr. Corbitt confronted Uhiren about her Stadol use and suggested that Uhiren enter into drug rehabilitation, Dr. Bursztajn opined that Uhiren "couldn't believe her ears at that point" because "it takes time for people to change their minds."

The district court granted Bristol-Myers's summary judgment motion. CV 200-000114, slip op. at 10 (E.D. Ark. August 16, 2002) (Wilson, J.). The district court noted that the following undisputed facts showed that Uhiren was on notice of her Stadol-related drug injury more than three years before she filed her complaint: (1) Dr. Corbitt's confrontation of Uhiren in 1994 in which Dr. Corbitt recommended that Uhiren participate in drug rehabilitation because of her Stadol consumption; (2)

Uhiren's admission that she lied to several physicians in 1994 and early 1995 in order to obtain multiple prescriptions of Stadol; (3) Uhiren's termination from her employment as a nurse practitioner in early 1995 because of an unfavorable on-going investigation into her drug abuse by the Arkansas Health Department; (4) testimony of Uhiren's supervisor that Uhiren did not contest his statement to her that the investigation by the Department of Health dealt with her alleged drug abuse; and (5) the fact that Uhiren filled prescriptions for 336 bottles of Stadol in 1994. Id. at 7-8.

With respect to Uhiren's arguments, the district court noted that although Dr. Bursztajn testified that Uhiren did not believe Dr. Corbitt in 1994 when Dr. Corbitt confronted her, another of Uhiren's experts, Dr. James Hayden, testified that Uhiren was aware of her Stadol addiction in 1994. The court refused to allow Uhiren to use her affidavit to establish a dispute in order to defeat summary judgment. Id. at 7.

This appeal followed. On appeal, Uhiren asserts the following errors by the district court: (1) failure to recognize the distinction between drug abuse and drug addiction; (2) failure to recognize the existence of a factual dispute as to when Uhiren first became aware of her alleged injuries; (3) rejection from consideration of the statements in Uhiren's sworn affidavit; (4) affording improper weight to the testimony of two of Uhiren's experts and ultimately giving no weight to one; (5) making a finding based on insufficient evidence that Uhiren's termination from employment was related to Stadol; and (6) concluding that Uhiren's complaint was untimely filed.

## II.

We review the district court's grant of summary judgment de novo, giving the non-moving party the most favorable reading of the record as well as the benefit of any reasonable inferences that arise from the record. Gentry v. Georgia-Pacific Corp., 250 F.3d 646, 649 (8th Cir. 2001).

Summary judgment is appropriate only when the pleadings, depositions and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Such a showing shifts to the non-movant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d (1986). The non-movant "must show there is sufficient evidence to support a jury verdict in [her] favor." Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir.1999). "Factual disputes that are irrelevant or unnecessary will not be counted," Anderson, 477 U.S. at 248, and a mere scintilla of evidence supporting the nonmovant's position will not fulfill the non-movant's burden, id. at 252.

The Arkansas statute of limitations provides that a product liability action "shall be commenced within three (3) years after the date on which the death, injury, or damage complained of occurs." Ark. Code Ann. § 16-116-103. A cause of action accrues when the plaintiff "first becomes aware of her condition, including both the fact of the injury and the probable causal connection between the injury and the product's use," Stewart v. Philip Morris, Inc., 205 F.3d 1054, 1055 (8th Cir. 2000) (internal punctuation omitted), or when the plaintiff "by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered," Martin v. Arthur, 339 Ark. 149, 159, 3 S.W.3d 684, 690 (1999).

Here, the issue is whether the record reflects any genuine issue of material fact regarding Uhiren's awareness of her drug problem and its causal connection to Stadol more than three years before she filed her complaint. In

addressing Uhiren's assertions of error, we focus on three key <u>de novo</u> determinations.

The first key determination is whether portions of Uhiren's deposition testimony referencing "abuse" should be considered as evidence of her "addiction" in determining the time at which Uhiren became aware of her dependency on Stadol.

Uhiren argues that because her complaint is predicated on drug addiction rather than drug abuse, and because "abuse" is not synonymous with "addiction," the district court should not have relied on testimony referencing drug abuse in arriving at its conclusion as to when Uhiren knew or should have known that she was addicted to Stadol. The cases she cites in support, however, are not persuasive.

More importantly, any distinction as to the labeling of Uhiren's drug problem as "abuse" or "addiction" is irrelevant to Uhiren's awareness of her problem with dependency that placed her on notice of a Stadol-related injury. Under the Arkansas discovery rule, a plaintiff's harm does not have to be fully manifest in order for the limitations period to begin to run. <u>Adkison v. G. D. Searle & Co.</u>, 971 F.2d 132, 134 (8th Cir. 1992). For her cause of action to accrue, therefore, Uhiren need only to have been aware of her excessive dependency on Stadol and on notice of injury. She need not have been fully aware of all the physical consequences of her Stadol dependency.

The second key determination is whether uncontroverted portions of the record accepted by the district court as conclusive proof of Uhiren's awareness of her addiction in 1994 and 1995 were subject to interpretation and thus presented triable factual issues. <u>See</u> <u>Gentry</u>, 250 F.3d at 649 (requiring that non-movant is entitled to benefit of reasonable inferences arising from record). Assessing the evidence in the record <u>de novo</u>, we note the following showings.

The record shows that in 1994, Dr. Corbitt directly confronted Uhiren about her Stadol addiction and recommended drug rehabilitation. Dr. Corbitt's uncontroverted testimony is confirmed by her notes and a letter that she wrote to Arkansas Blue Cross Blue Shield.

The record shows that Uhiren, a nurse practitioner, knew she was taking Stadol in quantities far greater than any doctor would knowingly approve – 366 bottles in 1994 alone. Uhiren testified that in 1994 and 1995 she evaded detection by withholding the fact that she was receiving Stadol prescriptions from several doctors.

The record shows that during the time period in which she was continually seeking and obtaining Stadol in large quantities, she was, according to her complaint, "suffer[ing] pain, diarrhea, severe stomach cramps and lost her sense of smell and taste" as a result of her dependency on Stadol.

The record includes uncontroverted evidence of the health-department investigation into her Stadol problem and subsequent termination from employment early in 1995. Her nurse practitioner supervisor testified that he terminated Uhiren on February 14, 1995, as a result of the nursing board's investigation into her drug abuse and that he discussed the board's findings with her.

The record shows that Uhiren admits having received in July of 1995 notice of a hearing to consider suspension of her nursing license because of her Stadol abuse.

In light of these showings, we concur with the district court that "one cannot escape the conclusion that [Uhiren] was on notice of drug abuse and of a causal relationship between this drug abuse and her injuries," CV 2:00-000114, slip op. at 8. Uhiren's neurologist confronted her about Stadol. She deceived other doctors in order to obtain Stadol. She pled that she experienced physical discomfort symptomatic of Stadol use. The health department investigated her Stadol abuse. Her

employer spoke to her about Stadol. The licensing board sent her a hearing notice referring to Stadol. These events – each of which centered around Uhiren's abuse of Stadol – are overwhelming proof that Uhiren was aware or should have been aware in 1994 and 1995 that Stadol was harmful to her.

The third key determination is whether, in light of the overwhelming evidence in the record showing that Uhiren was aware of harm in 1994 and 1995, Uhiren's psychologist's opinion, together with Uhiren's affidavit "clarifying" her admission to being addicted to Stadol in 1994, are sufficient to create a triable issue of fact with respect to determining the time at which Uhiren became aware of her Stadol addiction.

Dr. Bursztajn stated that Uhiren "did not and could not have discovered her addiction until late 1996 or early 1997." His opinion testimony, however, raises nothing more probative than a "metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, which fails to "show there is sufficient evidence to support a jury verdict in [her] favor," Dow Chem., 165 F.3d at 607, regarding when she was aware or reasonably should have been aware of her Stadol-related harm. In light of the overwhelming indications in the record that Uhiren was on notice of the causal relationship between Stadol and the evidence of harm that she was experiencing in 1994 and 1995, Dr. Bursztajn's testimony fails to satisfy Uhiren's burden to produce contrary evidence of the existence of a genuine issue of material fact. See Anderson, 477 U.S. at 256-57 (noting non-movant's burden of production).

Uhiren submitted an affidavit which the district court refused to consider because the affidavit contradicted her deposition testimony that she was addicted to Stadol in 1994. A sham attempt to create a factual issue for purposes of defeating summary judgment is clearly precluded, Herring v. Canada Life Assurance Co., 207 F.3d 1026, 1030 (8th Cir. 2000), although subsequent contrary affidavits are appropriate, however, in narrow circumstances for other purposes; id. at 1030-31; see also Bailey v. United Airlines, 279 F.3d 194, 201 (3d Cir. 2002) ("In a situation

where the witness was confused . . . or for some other reason misspoke, the subsequent correcting or clarifying affidavit may be sufficient to create a material dispute of fact.").

Uhiren argues that she filed the affidavit not to deny that she was addicted in 1994 but to clarify that her sworn testimony acknowledging her addiction was not based on her 1994 state of mind. The district court found Uhiren's justification for submitting the affidavit unpersuasive and viewed the affidavit as an impermissible attempt to defeat summary judgment where no other genuine issues of fact existed.

We need not address whether the district court appropriately disregarded Uhiren's affidavit, because the same "clarification" she purportedly sought to provide by affidavit was provided in her psychologist's opinion. We find that even if the district court had accepted her affidavit, the result would have been the same.

Pursuant to the foregoing discussion, we find no error in the district court's conclusion that there was no genuine issue of material fact regarding Uhiren's awareness prior to the three-year limitations period of her Stadol-related harm. Accordingly, we affirm the district court's grant of summary judgment in favor of Bristol-Myers.

_____