# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3586

_____

| | | |
|---|---|---|
| Executive Air Taxi Corporation, a | * | |
| North Dakota Corporation, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeals from the United States |
| City of Bismarck, North Dakota, a | * | District Court for the |
| municipal corporation; Mark Fetch; | * | District of North Dakota. |
| Dr. Steven J. Scherr, OnStar | * | |
| Management, Inc.; Timothy J. Thorsen, | * | |
| Airport Operations Manager; Gregory B. | * | |
| Haug, Airport Manager; Robert H. | * | |
| Simmers, Simson Investment Company; | * | |
| Bryce Hill, City Commissioner with | * | |
| Airport Portfolio; William Sorenson, | * | |
| Former Mayor; Cook Leasing, Inc.; | * | |
| Michael Aarestad, Aircraft Management | * | |
| Services, dba Aircraft Maintenance | * | |
| Services; Alan Sauter; William Wocken, | * | |
| City Administrator, City of Bismarck, | * | |
| | * | |
| Defendants/Appellees. | * | |
| | * | |

_____

No. 06-3600

_____

| | | |
|---|---|---|
| Executive Air Taxi Corporation, a | * | |
| North Dakota Corporation, | * | |
| | * | |

Plaintiff/Appellee,                    *
                                       *
        v.                             *
                                       *
City of Bismarck, North Dakota, a      *
municipal corporation,                 *
                                       *
        Defendant/Appellant,           *
                                       *
Mark Fetch; Dr. Steven J. Scherr,      *
OnStar Management, Inc.,               *
                                       *
        Defendants,                    *
                                       *
Timothy J. Thorsen, Airport Operations *
Manager; Gregory B. Haug, Airport      *
Manager,                               *
                                       *
        Defendants/Appellants,         *
                                       *
Robert H. Simmers, Simson Investment   *
Company,                               *
                                       *
        Defendant,                     *
                                       *
Bryce Hill, City Commissioner with     *
Airport Portfolio; William Sorenson,   *
Former Mayor;                          *
                                       *
        Defendants/Appellants,         *
                                       *
Cook Leasing, Inc.; Michael Aarestad,  *
Aircraft Management Services, dba       *
Aircraft Maintenance Services; Alan     *
Sauter,                                *
                                       *
        Defendants,                    *

|  |  | * |
| William Wocken, City Administrator, | | * |
| City of Bismarck, | | * |
|  |  | * |
| Defendant/Appellant. | | * |
|  |  | * |

_____

No. 06-3602

_____

|  |  | * |
| Executive Air Taxi Corporation, | | * |
| a North Dakota Corporation, | | * |
|  |  | * |
| Plaintiff/Appellee, | | * |
|  |  | * |
| v. | | * |
|  |  | * |
| City of Bismarck, North Dakota, | | * |
| a municipal corporation; Mark | | * |
| Fetch; Dr. Steven J. Scherr, OnStar | | * |
| Management, Inc.; Timothy J. | | * |
| Thorsen, Airport Operations | | * |
| Manager; Gregory B. Haug, Airport | | * |
| Manager; Robert H. Simmers, | | * |
| Simson Investment Company; | | * |
| Bryce Hill, City Commissioner with | | * |
| Airport Portfolio; William Sorenson, | | * |
| Former Mayor, | | * |
|  |  | * |
| Defendants, | | * |
|  |  | * |
| Cook Leasing, Inc., | | * |
|  |  | * |
| Defendant/Appellant, | | * |
|  |  | * |
| Michael Aarestad, Aircraft Management | | * |

Services, dba Aircraft Maintenance     *
Services; Alan Sauter; William Wocken,   *
City Administrator, City of Bismarck,     *
                                       *

     Defendants.               *

_____

Submitted: September 24, 2007
Filed: March 4, 2008

_____

Before COLLOTON, BEAM, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Executive Air Taxi Corporation ("EATC") appeals an adverse grant of summary judgment on its equal protection and substantive due process claims related to its activities at the Bismarck Municipal Airport ("BMA"). It also appeals certain discovery rulings. The City of Bismarck ("the City") and Cook Leasing, Inc., ("Cook") cross-appeal adverse summary judgment rulings on a contract claim and a motion for sanctions under Federal Rule of Civil Procedure 11. We affirm the district court[1] in all respects.

I.

EATC is a North Dakota corporation that has provided commercial aeronautical services at BMA since the mid-1970s. From then until the filing of this suit, EATC was the only full-service fixed base operator ("FBO") at BMA. A full-service FBO is a business that provides a full range of aeronautical services, including aircraft

_____

[1] The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

-4-

fueling, aircraft maintenance, charter services, air ambulance services, and aircraft and hanger rental.

The City, which owns and operates BMA, was a limited service provider during the same time period, providing aircraft fueling, hangar storage, and towing services. The private party defendants are, or at one time were, limited service providers at BMA. Robert Simmers and Michael Aarestad own Simson Investment Company ("Simson"), which owns buildings on land leased at BMA; Simmers and Aarestad also own Aircraft Management Services, Inc., ("AMS"), which leases space from Simson, and provides pilot services, flight instruction, and aircraft maintenance. Steven J. Scherr owns OnStar Management, Inc., which rents aircraft. Cook Leasing, Inc. ("Cook") also rents an aircraft. Mark Fetch and Allen Sauter provided flight instruction services based out of other airports, but occasionally picked students up at BMA, and at various times worked for other defendants.

In 1976, EATC negotiated a twenty-year lease with the City for land at BMA and renewed it for an additional ten years in 1995. The lease required EATC to operate a flying school, charter service, and an aircraft repair station, and to build facilities at BMA to provide these services. The agreement provided for low lease rates of two cents per square foot of unimproved property and six cents per square foot of improved property. By 2005, this rate had increased only to three cents per square foot of unimproved property and remained unchanged at six cents per square foot of improved property. No limited service provider had a comparable lease with BMA.

In 1989, the City issued EATC a permit to sell aviation fuel. The City and EATC are the only fuel providers at BMA. Revenue from fuel sales is a significant portion of the city's total revenue from the airport.

In May 2004, EATC brought suit under 42 U.S.C. § 1983, alleging that the City violated the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment by treating other businesses operating at BMA differently than EATC. According to EATC, the private party defendants conspired with the City in this discrimination, which caused EATC to lose revenue and to suffer a diminution in the value of its business. The district court rejected these claims, holding that the City had a rational basis for treating EATC differently, and that EATC was not deprived of any property interest protected by the Due Process Clause. The district court also refused to modify two discovery orders entered by a magistrate judge. The first order denied EATC's request to use a special software retrieval program to search for deleted materials on a City employee's laptop. The second order denied EATC's discovery request for financial information from private party defendants. The district court also rejected the City's counterclaim against EATC for breach of its fuel permit, holding that the statute of limitations barred any breach occurring before June 22, 1999, and that the entire alleged breach was waived. Finally, the district court denied Cook's Rule 11 motion against EATC, finding that EATC's allegations were not so baseless as to warrant sanctions.

## II.

We review a district court's grant of summary judgment *de novo*, considering the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Uhiren v. Bristol-Myers Squibb Co.*, 346 F.3d 824, 827 (8th Cir. 2003).

## A.

EATC claims that the City violated its constitutional right to equal protection of the laws by treating various limited service providers more favorably than EATC. It alleges that the City refused to provide it with towing services, references, and other

means of attracting business that the City provided to other businesses. EATC also argues that the City selectively enforced Bismarck Code of Ordinances § 10-08-07, allowing the private defendants to conduct commercial aeronautical services at BMA without leases, written standards, or payments, while simultaneously requiring EATC to have a written lease and strictly enforcing its terms.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Cntr.*, 473 U.S. 432, 439 (1985). When a State treats persons differently based on a suspect classification, such as race, the state action is subject to strict judicial scrutiny. Where no suspect classification is involved, however, the State need only show that the differential treatment is rationally related to a legitimate state interest. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). States have "wide latitude" when acting in the economic sphere. *City of Cleburne*, 473 U.S. at 440. EATC therefore must show that the City treated it differently from other parties, and that there was no rational basis for the differential treatment.

We are doubtful, as a threshold matter, that EATC – a full-service fixed base operator – is similarly situated with the limited service providers at the airport. But EATC argues that it is similarly situated with a "de facto" fixed base operator, comprised of the City and the limited service providers acting in concert. From this premise, EATC proceeds to argue that the City discriminated against EATC to boost the City's fuel sales.

Assuming that the parties are similarly situated, we believe that the City has shown a rational basis for its actions. A city has a legitimate interest in generating revenue from operating an airport and from selling fuel at the airport. *See Jacobsen v. City of Rapid City, S.D.*, 128 F.3d 660, 664 (8th Cir. 1997); *Alamo Rent-A-Car v.*

*Sarasota-Manatee Airport Auth.*, 825 F.2d 367, 373 (11th Cir. 1987). Particularly given that the Federal Aviation Administration ("FAA") requires grant-receiving airports to be "as self-sustaining as possible," 49 U.S.C. § 47107(a)(13), and authorizes public airport authorities to provide "any or all of the aeronautical services needed by the public," including fuel services, *see* FAA Order 5190.6A, Airport Compliance Handbook ¶ 3-9.d, we are comfortable that actions taken by the city to generate revenue are rationally related to a legitimate state interest.

The City's interest in preserving the revenue generated by its fuel sales provided a rational basis for most of the actions disputed by EATC. It was rational for the City to refuse to tow aircraft to EATC, because the opposite decision would encourage aircraft owners to use EATC's fueling services instead of the City's. Similarly, the City may rationally refer its customers seeking hangar space or aircraft maintenance to Simson rather than EATC, because Simson does not compete with the City for fuel sales.

EATC's argument regarding differential enforcement of § 10-08-07 also fails. At the time this lawsuit was commenced § 10-08-07 stated:

> Commercial Activities. A person may not engage in any commercial aeronautical activity on the airport without the *written approval* of, and under the *standards* prescribed by, the airport manager. For the purpose of this part, a commercial aeronautical activity includes any activity which involves, makes possible, or is required for the operation of aircraft, or which contributes to or is required for the safety of such operations. All *standards* required for any commercial aeronautical activity will be on file in the airport manager's office.

Bismarck, N.D., Code of Ordinances § 10-08-07 (subsequently amended on Oct. 12, 2004) (reprinted at Appellant's App. 154) (emphases added).

EATC argues that the City enforced the "written approval" and "standards" provisions of this ordinance against EATC, but not against the limited service providers. EATC argues that its detailed lease constituted written approval and established the standards referenced in the ordinance, and that the limited service providers at the airport were not required to have written approval or abide by the terms contained in EATC's lease.

The City had a rational basis for insisting that EATC receive written approval, while not requiring it from each of the private defendants. EATC was the only FBO at the airport; it was rational for the City to demand a formal lease arrangement from a party engaged in more substantial "commercial aeronautical activity." The limited service provider that came closest to FBO status, Simson Investment Company, also had a lease. It was rational for the City to insist that larger operations enter into formal agreements while declining to insist on such documentation from smaller private parties. Whether the City's decision to permit certain parties to engage in commercial activity without formal "written approval" conflicts with the local ordinance is a separate question of state law that does not implicate the Constitution. *See Snowden v. Hughes*, 321 U.S. 1, 11 (1944).

The ordinance also assumes the existence of "standards" for commercial aeronautical activity, but does not actually require the City to create these standards. The City did not actually adopt minimum standards until after this lawsuit commenced. EATC's argument seems to be that the requirements of its lease *were* "standards" within the meaning of § 10-08-07, and that, as such, they should have been applied to all commercial aeronautical activity on the airport. But it is only natural that leases should vary depending on the size, location, and quality of the property being leased, the length of the leasehold, the current needs and priorities of the parties to the lease, and many other factors. In 1976, for example, when the City first granted EATC a lease at BMA, the City desired certain amenities at BMA, such as a flying school, and negotiated for EATC to provide them as an FBO. In exchange,

EATC received a favorable rental rate, which barely rose over the following three decades. It was rational for the City later to decide that other leaseholders or entities doing business at the airport need not provide exactly the same amenities that EATC provided, and to charge different (and higher) rental rates for some of these businesses. We thus reject the argument that the City violated the Equal Protection Clause by setting different lease terms for EATC than it did for the limited service providers.

EATC relies heavily on an unpublished decision of the Fourth Circuit, *Jetstream Aero Services, Inc. v. New Hanover County*, No. 88-1748, 1989 WL 100644 (4th Cir. Aug. 15, 1989) (unpublished table decision), which discusses the circumstances under which the unlawful administration of a state statute results in a violation of the Equal Protection Clause. Applying *Snowden*, 321 U.S. at 8-9, and *LeClair v. Saunders*, 627 F.2d 606, 608-10 (2d Cir. 1980), the Fourth Circuit explained that unequal application of a state statute may violate the constitutional guarantee of equal protection when (1) the plaintiff, compared with others similarly situated, is selectively treated, and (2) such selective treatment is based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Jetstream*, 1989 WL 100644, at *1. In reviewing a grant of summary judgment in *Jetstream*, the court found sufficient evidence that the county intended to enforce certain state and local rules selectively against a fixed base operator at a county airport, and that this was done with a malicious or bad faith intent to harm. *Id*. at 3-5. EATC's theory here is that the City's failure to enforce the "written approval" requirement and prescribed "standards" against other parties at the airport amounted to selective treatment comparable to that deemed actionable by the Fourth Circuit.

We disagree with the analogy to *Jetstream*. EATC has not presented evidence that the City's differential treatment of commercial actors in this case was motivated by malice. The record is devoid of evidence comparable to that in *Jetstream*, where

-10-

an FAA official averred that the airport authority began harassing Jetstream "in a spirit of anger and hostility" after it filed a complaint against the airport authority, and Jetstream's president testified that the airport authority threatened to send inspectors after his company for the purpose of harassment if he appealed adverse building code decisions. *Id*. at 3. EATC, moreover, suffered no prejudice from the City's failure to enforce a "written approval" requirement with respect to other commercial actors. It is undisputed that approval was granted, and EATC has not shown that the absence of contemporaneous written documentation is anything more than a bookkeeping matter. As we have explained, any difference in "standards" applied to the various entities was rationally grounded in the City's legitimate interest in setting different terms for parties that served different functions at different times, or in protecting the City's sources of airport revenue.

EATC's substantive due process claim fails for the same reasons that defeat its equal protection claim. EATC has not alleged that it was deprived of a "fundamental right" for purposes of substantive due process analysis, so the City's action is constitutional if it rationally furthers a legitimate state interest. *Reno v. Flores*, 507 U.S. 292, 305 (1993); *Doe v. Miller*, 405 F.3d 700, 714 (8th Cir. 2005). A rational basis that survives equal protection scrutiny also satisfies substantive due process analysis. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 470 n.12 (1981); *Independent Charities of America, Inc. v. Minnesota*, 82 F.3d 791, 798 (8th Cir. 1996). And because the district court correctly dismissed EATC's claims asserting that the City's actions violated EATC's constitutional rights, the court was also correct to dismiss EATC's claim that the City and private parties conspired to deprive EATC of its constitutional rights by taking those same actions. *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990).

B.

EATC also appeals two discovery orders. These decisions denied EATC's request for forensic computer discovery of a City-owned laptop, and prevented EATC from discovering certain financial records from the private party defendants. We review a district court's orders for an abuse of discretion, allowing it "great latitude" in discovery matters. *Schoffstall v. Henderson*, 223 F.3d 818, 822-23 (8th Cir. 2000) (internal quotation omitted).

EATC argues that it should be permitted to have a third-party expert conduct a forensic investigation of a City-owned computer to search for relevant e-mails that might not have been produced in the discovery process. The district court found that the City had provided all relevant e-mails to EATC in hard copy, and that forensic discovery could expose confidential or privileged materials. We conclude that the district court's findings of fact were not clearly erroneous, and in light of that factual premise, there was no abuse of discretion in declining to order a forensic analysis of the computer.

The financial records sought by EATC relate only to information that EATC asserts would be helpful in determining its damages from revenue lost to other private commercial actors at the airport. Because we conclude that the district court properly dismissed EATC's claims asserting liability, the discovery dispute concerning damages is moot. *See Murray v. Chicago Transit Auth.*, 252 F.3d 880, 890 (7th Cir. 2001).

III.

A.

The City cross-appeals the district court's order dismissing the City's counterclaim for breach of contract regarding the fuel flowage fee. The 1989 retail-fueling permit obtained by EATC from the City stated that EATC would pay the City a flowage fee of three cents per gallon of fuel dispensed to "certificated scheduled airlines," and five cents per gallon for all other fueling services EATC provided. The City argues that "certificated scheduled airlines" means passenger airlines only, and that it learned during discovery that EATC was remitting only a three-cent per gallon fee for other customers. EATC maintains that "certificated scheduled airlines" encompasses certificated freight airlines as well as passenger airlines, and has charged the special three-cent fee to the Department of Defense, FedEx, and UPS. The City admits that it was aware in 1990 that EATC was charging the lower fee to carriers other than passenger airlines, but argues that it reasonably believed EATC had amended its charging practice. The district court held that the City's counterclaim was barred by the statute of limitations or waived.

Under North Dakota law, the applicable statute of limitations for a contract claim is six years. N.D. Cent. Code § 28-04-16(1). This statute of limitations may be modified by the discovery rule, which "postpones a claim's accrual until the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury." *Wells v. First Am. Bank West*, 598 N.W.2d 834, 838 (N.D. 1999). In this case, the City had actual knowledge in 1990 of the alleged breach of contract. In a letter dated January 16, 1990, the airport manager wrote to EATC stating that EATC was collecting a three-cent fuel flowage fee from certain parties, even though the airport "was not aware that Executive Air Taxi was fueling any of the certificated scheduled airlines." The letter then asked EATC to "[p]lease advise." EATC never replied to the letter, and the City took no action to investigate

further. Because the City had knowledge of the alleged breach in 1990, the statute of limitations has run for all claims which accrued prior to June 22, 1999 – six years from the date on which the City sought leave to assert a counterclaim in June 2005.

With respect to any claims within the statute of limitations, we conclude that the City has waived its alleged contractual right to the additional two cents per gallon for certificated freight airlines. The Supreme Court of North Dakota has explained that waiver may be found from "an unexplained delay in enforcing contractual rights or accepting performance different than called for by the contract," and that the existence of waiver is a question of law "if circumstances of an alleged waiver are admitted or clearly established and reasonable persons can draw only one conclusion from those circumstances." *Pfeifle v. Tanabe*, 620 N.W.2d 167, 172 (N.D. 2000).

Since receiving its permit in 1990, EATC has provided the City with monthly reports regarding the flowage fee and flowage fee payments. These reports show that EATC continued to collect a three-cent fee from certain customers. The City claims that it is impossible to tell from these monthly reports whether any particular customer was charged the three-cent or the five-cent rate, and that it thus did not realize that EATC was using the lower rate for entities that the City does not consider to be "certificated scheduled airlines." But the City admits that it learned of the same alleged breach from just such a report in 1990. And EATC's permit gave the City the right to require EATC to provide more detailed records, including "invoices, delivery tickets and other records." Yet the City made no effort to investigate EATC's charging practices or to use the terms of the permit to require compliance with its interpretation of the agreement. The City's continued acceptance of EATC's reports and fees thus demonstrated acquiescence in EATC's definition of "certificated scheduled airlines." We conclude that the record here admits of but one reasonable inference: By not following up on its 1990 letter to EATC or making any further investigation of the fee disparity, the City waived its right to object to fifteen years of uninterrupted behavior by EATC under the contract.

-14-

B.

Finally, Cook appeals the denial of its motion for sanctions against EATC under Rule 11 of the Federal Rules of Civil Procedure. Cook argues that EATC failed to make a reasonable inquiry into the facts and law supporting its allegation that Cook engaged in a conspiracy against it. We review a district court's denial of Rule 11 sanctions for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Because Rule 11 determinations often involve "fact-intensive, close calls," *id.* at 404, we give deference to the determination of the trial court, which is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted. *Clark v. United Parcel Service, Inc.*, 460 F.3d 1004, 1010 (8th Cir. 2006), *cert. denied sub nom Buchanan v. United Parcel Service, Inc.*, 127 S. Ct. 2043 (2007). In this case, the district court previously had denied the motion to dismiss EATC's complaint for failure to state a claim upon which relief could be granted, and observed, in denying the motion for sanctions, that the claim certainly had legal, if not evidentiary, support. While the factual basis for EATC's claim against Cook was "thin," and ultimately failed to withstand summary judgment, the court felt that it was not "so baseless as to warrant Rule 11 sanctions." Given the wide discretion afforded the district court in matters of sanctions, we conclude that this decision was not an abuse of discretion.

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.
_____

-15-