# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2961

_____

Hershel Lee Robinson

*Plaintiff - Appellant*

v.

Mine Safety Appliances Company

*Defendant - Appellee*

American Optical Corporation; 3M Company; Pangborn Corporation; Clark Sand Company, Inc.; Dependable Abrasives, Inc.

*Defendant*s

Precision Packaging, Inc.

*Defendant - Appellee*

Morie Company; Pine Bluff Sand and Gravel Company

*Defendant*s

E.D. Bullard Company

*Defendant - Appellee*

Empire Abrasive Equipment Corporation; Empire Abrasive Equipment Company LP

*Defendant*s

Clemco Industries, Inc.

*Defendant - Appellee*

Schmidt Manufacturing, Inc.; Bob Schmidt, Inc.; Pauli & Griffin Company; Kelco Sales & Engineering Company; Mississippi Valley Silica Co. Inc.; Standard Sand & Silica Company; Unimin Corporation; Vulcan Materials Company; Jane & John Does, 1-500; Doe Corporation, John & Jane 1-491

*Defendant*s

———————

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

———————

Submitted: April 17, 2015
Filed: August 3, 2015

———————

Before WOLLMAN and GRUENDER, Circuit Judges, and GRITZNER,[1] District Judge.

———————

GRUENDER, Circuit Judge.

Hershel Robinson, a former sandblaster, claimed various defendants were responsible for damage to his lungs. The district court[2] concluded that Robinson's suit was time-barred under Arkansas's three-year statute of limitations for product-liability suits. We affirm.

———————————

[1] The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

[2] The Honorable D.P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

Robinson worked as a sandblaster for decades, spraying surfaces with sand to scour them before painting. This sand sometimes breaks down into silica dust, which, if inhaled, can cause the incurable lung disease silicosis. Robinson does not claim that he was otherwise exposed to silica dust, which is the only cause of silicosis.

By 1997, Robinson knew that sandblasting could cause silicosis. The next year he saw his primary doctor, Vanessa Ragland, after coughing up white mucus. In 2002, he went to the doctor again, this time for bronchitis.

By the middle of 2007, three doctors suspected, believed, or had information reflecting that Robinson had silicosis. In February of that year, Robinson went to an emergency room for chest pain. The radiology report from that visit lists three possible explanations: tuberculosis, sarcoidosis (another disease that usually affects the lungs), or one of the pneumonoconioses—diseases such as silicosis that are caused by inhaling certain dusts. The next day, Robinson saw Dr. Ragland, and she referred him to a respiratory specialist, Dr. Albert Lynn Ridgeway. Dr. Ridgeway "encouraged [Robinson] to wear his . . . mask," and his medical notes reflect an "impression" of "silicosis related to sandblasting." Robinson saw Dr. Ridgeway again that summer. The notes from the summer visit explain that "Mr. Robinson returns today to follow up his silicosis." And these notes too list an "impression" of silicosis. Dr. Ridgeway sent a copy of his notes from the first visit back to Dr. Ragland.

In 2011, Dr. Ridgeway biopsied some of Robinson's lung. According to Robinson, this was when Dr. Ridgeway first told him he had silicosis.

Finally, in 2012, Robinson sued more than a thousand entities that either "sold, designed, manufactured, or marketed . . . silica related products," alleging that they were responsible for his silicosis. The district court eventually ruled the suit untimely and granted summary judgment to the defendants.

-3-

We review grants of summary judgment *de novo*, viewing facts in the light most favorable to the nonmoving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

Arkansas law governs this diversity suit. *See G & K Servs. Co., Inc. v. Bill's Super Foods, Inc.*, 766 F.3d 797, 800 (8th Cir. 2014). "We therefore apply decisions of the Arkansas Supreme Court construing Arkansas law, and we attempt to predict how that court would decide any state law questions that it has not yet resolved." *Id.* More specifically, Robinson agrees that Arkansas's three-year limitations period for product-liability actions applies to this suit. Ark. Code Ann. § 16-116-103. This limitations period is subject to a discovery rule: the period "does not commence running until the plaintiff knew or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered." *Martin v. Arthur*, 3 S.W.3d 684, 690 (Ark. 1999); *see Uhiren v. Bristol–Myers Squibb Co., Inc.*, 346 F.3d 824, 827-28 (8th Cir. 2003). "[T]he full extent of the harm is not required; indeed, the manifestation of the nature of the harm . . . may be slight." *Martin*, 3 S.W.3d at 690. In short, then, this appeal turns on when Robinson knew or, by the exercise of reasonable diligence, should have known that various silica-related products had damaged his lungs. If he knew or should have known in 2011, his 2012 suit was timely. If he knew or should have known in 2007, his suit was barred by the statute of limitations.

-4-

On appeal, Robinson focuses primarily on whether Dr. Ridgeway told him about his silicosis in 2007 or, as he claims, in 2011. For various reasons, the question of when Robinson had actual knowledge of his silicosis is confusing.[3]

Rather than confront that confusion, we simply accept as true that Dr. Ridgeway did not tell Robinson about his silicosis until 2011. We ask instead whether there is a genuine issue of fact as to when Robinson, by the exercise of reasonable diligence, should have discovered that various silica-related products had damaged his lungs. We do not focus on a diagnosis because Arkansas law considers the connection between the product and merely the "nature of the harm." *Martin*, 3 S.W.3d at 687; *see Uhiren*, 346 F.3d at 828 (explaining that plaintiff "need not have been fully aware of all the physical consequences of her [drug] dependency" to trigger the limitations period of § 16-116-103); *Mulligan v. Lederle Labs., Div. of Am. Cyanamid Co.*, 786 F.2d 859, 864 (8th Cir. 1986); *see also Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 136 (8th Cir. 1992) ("[A] doctor's diagnosis of a causal connection is not necessary for the limitations period to start running.").

---

[3]The issue of Robinson's actual knowledge is so confused because of the actions of Robinson's two lead attorneys in the district court. One attorney received Dr. Ridgeway's 2007 records months before Robinson filed suit. The attorneys concede that they improperly failed to disclose these records, which are crucial to the issue of Robinson's actual knowledge. Moreover, despite the first attorney's possession of the 2007 records, he did not correct Robinson's misstatement in a deposition that he first saw Dr. Ridgeway in 2011—a misstatement the defendants effectively could not question because the attorney had not disclosed the 2007 records. And the other attorney signed an interrogatory answer providing visitation dates ranging back to 1990 for eight of Robinson's medical providers, yet listing "cannot recall exact dates" for Dr. Ridgeway—again despite the other attorney's possession of the 2007 records. The district court denied without prejudice a motion for sanctions as moot in light of the grant of summary judgment. It did, however, call the nondisclosure "troubling." We agree.

What, then, by the exercise of reasonable diligence, should Robinson have known in 2007? In 2007, Robinson had sandblasted for decades, knew sandblasting could cause silicosis, was not otherwise exposed to silica dust, had some history of respiratory problems, and went to an emergency room for chest pain. A radiologist noted that Robinson might have a disease caused by dust inhalation. Then, at the suggestion of Dr. Ragland, Robinson visited a respiratory specialist, Dr. Ridgeway, who formed an impression of silicosis and told Robinson to wear a mask while sandblasting. That summer, Robinson visited Dr. Ridgeway again to, in Dr. Ridgeway's words, "follow up his silicosis." And Dr. Ragland received notes reflecting Dr. Ridgeway's impression. Even if, for some reason, Dr. Ridgeway had not yet told Robinson about his silicosis, Robinson, by the exercise of reasonable diligence, should have known that certain silica-related products had damaged his lungs. All he had to do was ask either Dr. Ridgeway or Dr. Ragland whether sandblasting had hurt his lungs, and either could have told him that he appeared to have silicosis. Given Robinson's history and his knowledge of silicosis, reasonable diligence required this question. There is no genuine dispute that in 2007 Robinson reasonably should have known of his lung damage and its connection to silica-related products.

Our holding is particularly similar to that in *Stewart v. Philip Morris, Inc.*, 205 F.3d 1054 (8th Cir. 2000) (per curiam), in which we found actual knowledge as a matter of law even before a diagnosis. Linda Stewart, a smoker for forty years, had heard warnings about cigarettes and had come to believe that they could cause emphysema. *Id.* at 1055. She had developed a "smoker's cough" in the late 1980s and other symptoms in August 1994: trouble breathing, chronic fatigue, lost appetite, constant coughing, and coughing up blood. *Id.* But she was not diagnosed with lung cancer until October 1994. *Id.* After she sued Philip Morris, we concluded that summary judgment was appropriate under the same Arkansas statute of limitations. *Id.* The limitations period, we held, began not when Stewart was diagnosed in October 1994, but in August, when she knew the risks of smoking and when her

symptoms arose. *Id.* at 1056. Similarly, in 2007, Robinson undisputedly had actual knowledge of the risk of lung injury from sandblasting. And, as just discussed, Robinson should have had at least as much knowledge of his condition as Stewart had of hers. Stewart, not yet diagnosed in August 1994, triggered the limitations period merely with knowledge of her symptoms. Robinson also had symptoms of lung damage, and he should have had knowledge of his underlying condition from two or perhaps even three doctors.

There is no genuine dispute that, by the exercise of reasonable diligence, Robinson should have known in 2007 that silica-related products had damaged his lungs. Because he did not sue until 2012, his suit is barred by the three-year statute of limitations. We affirm the grant of summary judgment.

_____