James M. Moody Jr., United States District Judge
This is a products liability action in which Plaintiff, Larry Murray, alleges that a 3M mask failed to adequately protect him from silica exposure. Pending are the following motions filed by the remaining defendant, 3M Company ("3M"): a motion for summary judgment (Document No. 57), three motions to exclude testimony (Documents. 60-62), and a motion to dismiss for lack of jurisdiction and judicial estoppel due to Plaintiff's bankruptcy filing (Document No. 80). All of the motions have been responded to and are ripe for determination.
Background Facts
Plaintiff filed an asbestos lawsuit in 2003 which he subsequently settled.[1] His lawsuit was based on his exposure to asbestos in all of the jobs that he worked at, including grinding and knocking knots and sandblasting metal transformers or tanks at Central Maloney (from 1973 until 1975), laying ties and doing ballast work for what is now the Union Pacific Railroad (from 1978 through 1979), and drilling holes through rocks with bits and jackhammers and dynamiting holes in rocks for Arkansas Power and Light (from 1980 through 1988). When asked in discovery in the present action if he had ever sustained any personal injury as the result of any exposure to chemicals, fumes, gases, fibers, particles or dusts, Plaintiff responded with the information about his asbestos claim filed in 2003. Plaintiff testified that he doesn't know anything about any symptoms of an asbestos-related condition. He thinks he has received about $2,000 or $3,000 so far from the asbestos settlement. His current lawsuit is based on the same occupational exposures as his previous asbestos lawsuit.
While Plaintiff worked for Central Maloney, he wore an air-fed hood only when he sandblasted, which is what he did "mostly all the time ... mostly every day ... the whole time he was there." While he was sweeping and shoveling the sand during clean up, he testified that he wore a 3M mask.[2] While Plaintiff worked for the railroad, he did not wear any respiratory protection. During his time at Arkansas Power *871 and Light, Plaintiff testified that he wore a 3M mask while he was jackhammering and drilling but not while he was dynamiting. Plaintiff testified that he was never trained in respiratory protection in any of the jobs he worked nor was he warned about the dangers of silica exposure.
On September 19, 2011, Dr. Haber performed a B reading of an x-ray of Plaintiff's chest dated September 6, 2011. He found "small parenchymal opacities present consistent with pneumoconiosis" and other findings that were "consistent with mixed pneumoconiosis.[3] " On May 29, 2015, after this lawsuit was filed, Dr. Haber performed an independent medical examination. He noted that Plaintiff had no chest pain, wheezing, cough, or sputum production and his respirations were unlabored, the lungs were clear to auscultation and there were no wheezes. On July 20, 2015, Dr. Haber wrote his report from his examination and gave his findings from an x-ray of Plaintiff's chest dated June 17, 2015, again noting "small parenchymal opacities present consistent with pneumoconiosis" as in his initial B-read findings. At this time he gave the opinion that Plaintiff has mild chronic simple silicosis and that he remains at risk for progressive lung disease.
Plaintiff has never had any kind of medical treatment related to his lungs, for asbestosis or silicosis. He testified that he has never been told by a medical doctor that he has silicosis or a silica-related condition. From the evidence presented it does not appear that Plaintiff is experiencing any symptoms related to Dr. Haber's diagnosis of mild chronic simple silicosis. Plaintiff testified that he has not incurred any medical bills as a result of his alleged silica exposure.
Plaintiff filed this action in Jefferson County, Arkansas on September 16, 2014. 3M filed a notice of removal on April 3, 2015, after Plaintiff dismissed all the non-diverse defendants.
Plaintiff's Bankruptcy
Plaintiff filed a Chapter 7 bankruptcy petition on August 24, 2009. He did not list his claims against 3M on his bankruptcy schedules. On December 15, 2009, an order was entered discharging Plaintiff from bankruptcy; the bankruptcy trustee had previously filed a report stating that there was no property available for distribution over and above the exempted property. On December 6, 2016, Plaintiff filed a motion to reopen his bankruptcy case for the purpose of avoiding a judicial lien that predated his 2009 bankruptcy petition; an order was entered allowing the requested relief, and the bankruptcy case was again closed. On April 3, 2017, Plaintiff again filed a motion to reopen his bankruptcy case for the purpose of avoiding a different judicial lien that predated his 2009 bankruptcy petition; that motion was granted, and the case was reopened. At the time 3M filed its motion to dismiss, the bankruptcy case was still open. In both motions to reopen, Plaintiff stated that it was not necessary to appoint a trustee for purposes of his motions. Plaintiff did not amend his schedules to disclose his current claims against 3M.
3M's Motion to Dismiss
The Court will first rule on the issues raised in 3M's motion to dismiss (Doc. No. 80). In its motion, 3M argues that this Court lacks subject matter jurisdiction over the claims as a result of Plaintiff's Chapter 7 bankruptcy petition in 2009. In addition, 3M argues that Murray is judicially estopped from prosecuting his claims as he has taken a position in this Court *872 that is contrary to the position he previously took in the bankruptcy court.
On the issue of subject matter jurisdiction, the question this Court must answer is whether the claim that is the subject of this action was the property of the bankruptcy estate at the time that Plaintiff filed his Chapter 7 petition. If it was, then only the bankruptcy trustee has standing to pursue the claim.
The bankruptcy estate is broadly defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). 3M argues that the test for determining whether a particular cause of action is property of the estate is whether the cause of action is "sufficiently rooted in the debtor's pre-bankruptcy past," not the date that the cause of action accrues under state law. Plaintiff asserts that the test is when did his claim accrue under Arkansas law.
The Eight Circuit has used the "sufficiently rooted" language in analyzing whether a cause of action is part of the bankruptcy estate. Longaker v. Boston Sci. Corp. , 715 F.3d 658, 662 (8th Cir. 2013) (referencing In re LaSpina , 304 B.R. 814, 820 (Bankr.S.D.Ohio 2004) ("We find the guaranteed payments analogous to the severance payment in LaSpina , where the court held that the payments, having no relation to the debtor's post-petition services, were sufficiently rooted in the debtor's pre-petition past and were therefore part of the debtor's bankruptcy estate."); Fix v. First State Bank of Roscoe , 559 F.3d 803, 809 (8th Cir. 2009) ("at least four of the five causes of action Fix brought against the Bank in March 2006 ... have sufficient roots in Fix's pre-bankruptcy activities to be considered property of the bankruptcy estate, even though the Bank's alleged breach of its promise occurred post-petition."). The Court in Fix relied on a case from the Supreme Court, Segal v. Rochelle , 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) : ("[A] cause of action will be 'property of the estate' if it has sufficient roots in the debtor's pre-bankruptcy activities and is not entangled with the debtor's 'fresh start,' regardless of when the claim accrues under state law") (citing Segal at 380, 86 S.Ct. 511 ).
However, the Eighth Circuit has also clearly relied on state law to determine when a cause of action accrued for purposes of determining when a claim was property of a bankruptcy estate. "The nature and extent of the debtor's interest in property are determined by state law. To determine whether the Appellant had a property interest in the cause of action at the time of the bankruptcy, we must look to whether the cause of action had accrued." In re Deer , 266 B.R. 772 (8th Cir. BAP 1999) (internal citations omitted). In Arkansas, a cause of action for products liability accrues, and the statute of limitations begin running, when the plaintiff knows "or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered." Robinson v. Mine Safety Appliances Co. , 795 F.3d 879, 881 (8th Cir. 2015) (quoting Martin v. Arthur , 339 Ark. 149, 3 S.W.3d 684, 690 (1999). See also In re Prempro Prod. Liab. Litig. , 586 F.3d 547, 564 (8th Cir. 2009).
This Court is being presented with arguments for the "accrual approach" as determined by state law and the "sufficiently rooted" approach. The bankruptcy court in Pennsylvania in the case of In re Harber , 553 B.R. 522 (Bankr. W.D. Pa. 2016), chose to adopt a blended approach when confronted with these same two approaches. The court stated that "it is not enough that a claim be 'rooted' in the pre-bankruptcy past. It must be 'sufficiently rooted," which requires a "fact-intensive analysis to assess whether a substantial portion of the claim elements existed prepetition so that *873 it would [be] inequitable to deprive the bankruptcy estate of this asset." Id. at 533.
Here, there is no question that Plaintiff's claim is rooted in his pre-petition history. He is claiming that he suffered injuries to his lungs as a result of a defective mask manufactured by 3M and used by him at various jobs from 1973 to 1988. His bankruptcy petition was filed in 2009. There is also no question that Plaintiff was aware of injury to his lungs when he filed a claim for asbestos-related injuries in 2003 arising out of the same work history from 1973 to 1988 and that his claim had accrued by the time he filed suit. Plaintiff argues that because he is claiming a different disease process in this lawsuit (silicosis) versus his 2003 lawsuit (asbestosis ), and since he didn't discover this particular injury until Dr. Harper read his x-ray in September of 2011, his claim didn't accrue until September of 2011. However, at that time, the medical evidence was that his x-ray results were "consistent with mixed pneumoconiosis," which Plaintiff asserts is "usually a result of exposure to asbestos and silica but can also result from exposure to other pneumoconiosis producing dusts." The Court finds that Plaintiff, by the exercise of reasonable diligence, should have discovered the causal connection between the 3M mask and the injuries suffered to his lungs by the time he filed his 2003 lawsuit. Therefore, under either the sufficiently-rooted approach, the accrual approach, or a blended approach, Plaintiff's claim belongs to the bankruptcy estate, and only the bankruptcy trustee has standing to pursue it. For this reason, Defendant's motion to dismiss for lack of jurisdiction is granted.
Judicial Estoppel
While it is not required that the Court address the issue of judicial estoppel in light of its determination that it lacks subject matter jurisdiction, the Court has considered the issue and finds that the facts in this case do not lend themselves to an application of judicial estoppel. Judicial estoppel is an equitable doctrine applied when necessary to protect the integrity of the judicial process. Stallings v. Hussmann Corp. , 447 F.3d 1041, 1047 (8th Cir. 2006)"The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." Id. The Eighth Circuit recently listed three "non-exhaustive" factors that it is appropriate for a district court to consider: (1) whether the party's later position is 'clearly inconsistent' with its prior position; (2) whether a court was persuaded to accept a prior position 'so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled'; and (3) whether the party claiming inconsistent positions 'would derive an unfair advantage or impose an unfair detriment on the opposing party if not stopped.' Combs v. The Cordish Companies, Inc. , 862 F.3d 671, 678 (8th Cir. 2017), reh'g denied (Aug. 10, 2017) (internal citations omitted).
While the Court has found that Plaintiff should have discovered the causal connection between the 3M mask and the injuries suffered to his lungs by the time he filed his 2003 lawsuit, the Court is convinced that Plaintiff was not aware that he had a potential claim at the time he filed his bankruptcy case and received his discharge in 2009. His failure to list a claim against 3M does not create the perception that either the bankruptcy court or this Court has been misled. The motion to dismiss on the grounds of judicial estoppel is denied.
3M's Motion for Summary Judgment-Statute of Limitations
Prior to filing a motion to dismiss, 3M filed a motion for summary judgment raising *874 several arguments. In the event that this matter is appealed and the Eighth Circuit disagrees with the Court's finding that it has no jurisdiction, the Court will address the statute of limitations raised in 3M's motion for summary judgment.
Arkansas's three-year statute of limitations for product liability governs in this diversity action. Ark. Code Ann. § 16-116-103. "This limitations period is subject to a discovery rule: the period 'does not commence running until the plaintiff knew or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered.' " Robinson v. Mine Safety Appliances Co. , 795 F.3d 879, 881 (8th Cir. 2015) (quoting Martin v. Arthur , 3 S.W.3d 684, 690. "[T]he full extent of the harm is not required; indeed, the manifestation of the nature of the harm ... may be slight." Martin at 690. In Robinson , the Court described this connection as being required between the product and "merely" the nature of the harm.
Plaintiff argues that the facts surrounding his asbestos lawsuit are irrelevant to the present action. The Court disagrees. The issue is not when Plaintiff knew or should have known about his injury from silica versus asbestos, but when he should have known that the 3M product allegedly caused injury to his lungs. According to his responses to discovery in this lawsuit, Plaintiff knew when he filed his asbestos lawsuit in 2003 that he sustained injuries as a result of his exposure to "..., fibers, particles or dusts" during his employment from 1973 to 1988. Knowledge of the full extent of the harm is not required. There is no genuine dispute that in 2003 Plaintiff reasonably should have known of his lung damage and its connection to 3M's product. Therefore, this case would be barred by the statute of limitations.
Conclusion
Therefore, Defendant 3M's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Judicial Estoppel (Document No. 80) is GRANTED as to lack of subject matter jurisdiction and DENIED as to judicial estoppel, and the case is dismissed with prejudice. Therefore, Defendant's Motion for Summary Judgment (Document No. 57), Defendant's Motion to Exclude the Testimony of Darrell Bevis (Document No. 60), Defendant's Motion to Exclude Testimony of Edward Karnes Ph. D. (Document No. 61), and Defendant's Motion to Exclude Testimony of Dr. Vernon Rose, Ph.D. (Document No. 62), are each DENIED as MOOT. A separate judgment will be entered.
IT IS SO ORDERED this 13th day of March, 2018.

It is unclear when the settlement was reached.

3M has not conceded that Plaintiff wore its CM 8710 respirator, the mask at issue, at any time relevant to the lawsuit but has not moved for summary judgment on this issue.

Plaintiff asserts in response to 3M's motion to dismiss that "[m]ixed pneumoconiosis is usually a result of exposure to asbestos and silica but can also result from exposure to other pneumoconiosis producing dusts."